## No. 10,361.

### CITY OF BOULDER *v.* BOULDER AND WHITE ROCK DITCH AND RESERVOIR CO.

Decided June 4, 1923.

Action to compel a city to refrain from running its storm sewer water into an irrigating ditch. Judgment for plaintiff.

### *Reversed.*

1. ACTIONS—*Parties.* In an action to restrain the delivery of storm sewer water of a city into an irrigating ditch, it appearing that some of the consumers from the latter who were vitally interested in the controversy, had not been made parties, the judgment is reversed on that ground.

2. WATERS AND WATER COURSES—*Surface and Drainage—Rule in Colorado.* In determining the rights of parties concerning surface and drainage water, the civil law rule, modified to meet the exigencies and circumstances of each particular case, should and does prevail in Colorado.

3. WATER RIGHTS—*Irrigation and Domestic Use.* In the case under consideration, an adjudication decree for irrigation purposes did not give the appropriator a right for domestic use, and the court expresses a doubt, if under the conditions shown, a decree was justified, which prohibited the city from running its storm sewage into the ditch, on the ground that it rendered the water unfit for domestic use.

4.  MUNICIPAL CORPORATIONS—*Sewage Disposal.* The court observes
    that the problem of sewage disposal is one more likely to be
    wisely solved by mutual conference and concession, than by
    proceedings in court.

*Error to the District Court of Boulder County, Hon. Neil
F. Graham,. Judge.*

Mr. FRANK L. MOORHEAD, for plaintiff in error.

Messrs. MARTIN, NEWCOMER, FITZGERALD & TINGLOF,
for defendant in error.

*En banc.*

MR. JUSTICE CAMPBELL delivered the opinion of the
court.

THE Boulder and White Rock Ditch & Reservoir Com-
pany, the plaintiff, is the owner of, and operates, an irri-
gating ditch which diverts water from Boulder Creek,
near 12th street in the city of Boulder and carries this
water through the city for about two-thirds of a mile
and then passes out of its boundaries and on to lands of
its seventy or eighty stockholders who utilize the water
for irrigating their lands, and for domestic purposes.
The ditch as originally constructed was through what was
originally "Dry Creek" where the waters of Boulder
Creek, or a branch thereof, at one time flowed. Dry Creek
is said to be a natural channel or depression lying between
Boulder Creek to the south, and the higher lands to the
north, which constitute a part of the city of Boulder. The
city of Boulder has adopted a general plan for paving
some of its streets and alleys and constructing storm
sewers. The natural drainage of the land in the city is,
in general, from the northwest to the southeast. The
storm sewers are built in the numbered streets running
north and south. In carrying out its adopted plan the city
has already built one of these sewers in 11th street, which
empties into Boulder Creek only a short distance above
the headgate of the plaintiff's ditch; one in 13th street;
and another in 16th street. The 16th street sewer dis-

charges its contents directly into the irrigating ditch of the plaintiff, which it does through an underground pipe about forty-two inches in diameter. It is the intention of the city, in completing its general plan already outlined, to build other sewers in other streets and likewise connect them so as to discharge the water therefrom directly into this ditch. The plaintiff has brought this action for the purpose of compelling the city to withdraw its sewer or pipe line from 16th street so that water will not be discharged from the same into its ditch, and to restrain the city from further so trespassing upon its ditch and right of way, and from diverting or discharging any waters into the ditch through its sewers now or hereafter constructed, and to abate, as a nuisance, the 16th street sewer which pollutes the waters carried by the ditch. At the conclusion of the evidence the court made findings of fact, and, upon these findings, entered a decree declaring the acts of defendant a trespass, and a nuisance, as a pollution of the plaintiff's waters, and directing the city, within seven months, to disconnect its storm sewer system from the plaintiff's ditch at 16th street, and to make other provisions for discharging the storm sewer water collected by its system of sewers and pipes.

The findings of fact, in substance, are that the plaintiff's ditch was constructed and its rights thereunder acquired prior to the incorporation of the city, and that it was a trespass on the part of the city to use the irrigating ditch as an outlet for its storm sewer system, and that the waters thus collected are impregnated with, and contaminated by, harmful bacteria in large numbers, which constitute a menace to the health of the persons who use water for domestic purposes, and that the result of the acts of the plaintiff has been a pollution of the stream and that such pollution will be continued unless the nuisance is abated. There is also a finding that the collection by the defendant of the surface water on its paved streets and alleys into artificial channels or sewer pipes laid under ground, and discharging the same in a mass upon and into

plaintiff's ditch at one point, though such surface waters ultimately would reach the line of the plaintiff's ditch— the same being constructed along and through a natural depression into which surface waters would naturally flow —would thereby burden the ditch with more water than would naturally reach it, and in a concentrated mass or body, and in a different way and manner, than would be the case if nature had not been interfered with.

In the second defense of the answer it is alleged, and not denied, that in the decree rendered in the statutory adjudication proceeding, priorities of right were awarded to other ditches, or, rather to the same ditch, which is used by the plaintiff, in diverting and carrying to the consumers entitled thereto, the waters thus awarded, and that these other consumers are as vitally interested in the present controversy as is the plaintiff itself, and that in the due administration of justice no determination should be made of the matters alleged in the complaint until they are present. It was reversible error for the court not to cause these several ditch companies, representing the consumers, to be made parties to the suit. If further proceedings be had upon the remanding of the case, because of this error, the court should, upon request therefor, make them parties.

In view of the fact that final decision should not be made until all the parties interested have an opportunity to be heard, we withhold definite expression of opinion upon the merits. It is proper, however, to make pertinent observations to serve as a guide to the trial court and the parties in the event of a new hearing.

Mr. Farnham, in his valuable work on Waters and Water Rights, Vol. 3, chapter 29, has, with great ability, discussed the perplexing questions of the doctrine applicable to surface water and drainage. We think, in the main, the conclusions which he has reached, and with such precision stated, will enable the trial court to avoid some of the errors which apparently it made in the trial of this case.

*Canon City & Cripple Creek Ry. Co. v. Oxtoby,* 45 Colo. 214, 100 Pac. 1127, is not, as the plaintiff maintains, decisive of the crucial questions in this case. In the opinion there it was unnecessary to determine whether the so-called civil law rule, the alleged common enemy rule, or the modified civil law rule, prevails in this state. This statement was made because this Court was of the opinion that under either, or all, of the rules, the defendant in that action was liable for injury that was inflicted upon a lower, by an upper, proprietor in making an artificial borrow pit and collecting surface waters therein which escaped by percolation and seepage and injured the lower lands. In a recent case in this Court, *Johnson v. Kraeger,* 72 Colo. 547, 212 Pac. 820, in an opinion by Denison, J., the modified civil law of surface waters was applied. The case does not explicitly so state, but the lower proprietor, the plaintiff in that action, was held not entitled to recover damages for the discharge of water upon her land from drains which had been constructed by the upper proprietor on his land, when the water came down upon the plaintiff's lands before the drains were laid and did not send it down in a manner or quantity to do more harm than formerly. This is a modification of the original civil law rule which did not, but which the modified rule, does, authorize. The civil law rule, modified to meet the exigencies and circumstances of each particular case, is, as stated by Mr. Farnham, the one that generally prevails in this country and we think it does, and should, prevail in this state, and by it the rights of the parties to the present action are to be determined. We are also of opinion that, as shown by Mr. Farnham in his valuable work, the Wisconsin and Minnesota cases are extreme extensions of the civil law rule, and are not in harmony with the great weight of authority. The author has also demonstrated that the so-called common enemy rule was not the rule that prevailed at the common law, and that it exists in its fulness only in the states of Massachusetts and New Jersey, and was invented largely to meet the peculiar local

conditions there existing. It is inapplicable to the conditions in our own state and should not be applied to the facts of this case as pleaded in the complaint.

The defendant insists, and the evidence seems to sustain its position, that the plaintiff's ditch was constructed in, and that the same runs along the course of, a natural drainage way into which would naturally flow, if unobstructed, the surface water that falls upon the land within that part of the city of Boulder here affected. The court made no specific findings of fact upon this issue, and, upon a rehearing, it should explicitly find whether or not this is such a natural drainage way, for, if it is and the plaintiff's grantors chose to use it in which to construct its ditch to carry water for irrigation, and if, as is admitted, the surface drainage would naturally and ultimately flow into this ditch, if not obstructed, it would have no cause of complaint merely upon the ground that the city of Boulder, in building storm sewers and paving and grading streets, collected this surface water and accelerated its flow and precipitated or discharged the same at some particular point or points in the line of the ditch, instead of spreading it out at different places of entrance. One of the officers of the plaintiff testified at the trial that so far, it was not the quantity, but the quality, of water that had caused damage.

Upon the question of the pollution of the ditch water by casting into it the storm sewer water, we are constrained to say that we are not satisfied, even upon the plaintiff's own showing, that a case was made which justified the finding of the court that the same constituted a nuisance and should be abated. The plaintiff's appropriation of water and its right to divert the same from the stream was for irrigation purposes. The statute that provided for adjudication of water rights, did not include rights for domestic or manufacturing purposes and no provision of the decree purported to confer them. There is no complaint here that emptying of the storm sewer into the plaintiff's ditch has made it of less value for irrigation

purposes, and it may not be altogether clear that the plaintiff has acquired, as against the city, any such vested right to the use of this irrigating water for domestic purposes as would justify the drastic remedy applied by the decree. It appears that the percentage of harmful bacteria in Boulder Creek immediately above the headgate of the plaintiff's ditch, and which is diverted by plaintiff's ditch, is the same as that of the water in the ditch just below the point where the water from the defendant's sewer enters. We make these statements in view of the decision of the United States Supreme Court in two celebrated cases: *Missouri v. Illinois,* 180 U. S. 208, 21 Sup. Ct. 331, 45 L. Ed. 497; *Id.,* 200 U. S. 496, 26 Sup. Ct. 268, 50 L. Ed. 572; *New York v. New Jersey,* 256 U. S. 296, 41 Sup. Ct. 492, 65 L. Ed. 937. The pollution complained of in those cases was much greater and more highly injurious than that claimed in this case. Notwithstanding this fact the Supreme Court of the United States refused to abate the same as a public nuisance or to restrain the discharge of sewage from large tracts of land in the one case, into upper New York Bay, and in the other, into the Mississippi river above the city of St. Louis. In the New York and New Jersey case the court, in closing its opinion, observed:

"We cannot withhold the suggestion, inspired by the consideration of this case, that the grave problem of sewage disposal presented by the large and growing populations living on the shores of New York Bay is one more likely to be wisely solved by cooperative study and by conference and mutual concession on the part of representatives of the States so vitally interested in it than by proceedings in any court however constituted."

A similar observation here is just as applicable to the problem of sewage disposal by the city of Boulder, and we commend it to the parties to this action. In denying the relief prayed for in that case the Supreme Court dismissed the bill without prejudice to the instituting of another suit for injunction if the proposed sewer in further oper-

ation proved sufficiently injurious to the waters of the bay to lead the State of New York to conclude that the protection of the health, wealth or commerce of its people required another application to the court for relief. We repeat that, in view of the fact that other parties must be brought in, we do not intend, by any statement herein made, to foreclose the rights of any of the parties in advance of a full hearing, especially upon the facts. Our views of the appropriate principles of law to be applied have been indicated and the trial court should have no difficulty in applying to the facts which are developed in the new hearing, the appropriate principles of law. The judgment is reversed and the cause remanded with instructions to the district court to cause all other ditch companies and other owners, or representatives of consumers of water in this ditch, to be made parties, and that other proceedings, if any are had, should not be inconsistent with the views expressed in this opinion. The right to use the record evidence at the first trial is given, and, if the parties consent, the oral testimony there given may be used, subject to objections, if any, by the new parties, together with such other competent evidence as the parties produce.