## No. 18,605.

### City and County of Denver v. Stanley Aviation Corporation.

(352 P. [2d] 291)

Decided May 23, 1960.

Mr. JOHN C. BANKS, Mr. TY R. WILLIAMS, Mr. W. KEITH PETERSON, for plaintiff in error.

Messrs. ROBERTSON, TULL, DANKS & HAYS, Mr. CLARKE W. KARR, for defendant in error.

*In Department.*

PER CURIAM.

THE parties will be referred to as they appeared in the trial court, where defendant in error was plaintiff and plaintiff in error was defendant, or by name.

Plaintiff sued for damages for the alleged obstruction of a drainage course with resulting water and sediment damages to certain of its chattel property. The locus is the vicinity of Denver's Stapleton Airfield. Judgment was for the plaintiff in the sum of Eight Hundred Twenty-Seven Dollars ($827.00), and the defendant is here by writ of error seeking reversal.

Denver owned land pertinent hereto north of 26th Avenue, and utilized it as a part of Stapleton Airfield, established as a municipal airport about 1929. The pertinent land south of 26th Avenue was at one time owned by the City of Aurora, a portion of which was used for a sewage disposal plant and to channel effluent from the plant. The course of a ditch or intermittent stream, referred to as "Westerly Creek," traversed the City of Aurora lands and carried effluent from its disposal plant, then continued on through Stapleton Airfield in a general northerly direction, drained surface waters from the general area, including a part of Stapleton Airfield, and finally emptied into Sand Creek.

The United States Works Progress Administration in

1936, as a part of the improvement of the air field, constructed, laid and covered with earth a 63-inch masonry pipe for a distance of approximately three-quarters of a mile along the channel of Westerly Creek, after which the surface waters of the area and the effluent from the sewage plant flowed through this tube underneath improved Stapleton Airfield. The grade of the pipe was approximately the same as the grade of the channel it replaced. The installation of the 63-inch pipe was in accordance with and pursuant to designs, plans and specifications, and constitutes a part of the storm sewer system of Denver, and was and is an integral part of Stapleton Airport facilities.

In 1948 it became necessary to enlarge the air field, and Denver commenced an action in Adams County District Court against the City of Aurora and some individual owners for the condemnation of property for that purpose. Denver was granted immediate possession and promptly began the construction of an east-west runway and extended and covered the 63-inch pipe approximately 300 feet south. The condemnation suit was terminated by stipulation. Title vested in Denver in October, 1948. Aurora's adjacent residue lands were situated in a depressed area, bisected by Westerly Creek. This residue, purchased by the plaintiff in 1953, constitutes the lands in question.

In July, 1956, a heavy rain fell on the area and water backed into the lower elevations of plaintiff's land, causing damage to some of its chattel property. Early in 1957 the plaintiff filed this action, alleging that the 1936 and 1948 construtcion obstructed the drainage and plaintiff was damaged thereby, and prayed damages in the sum of Sixteen Hundred and Sixty-Four Dollars ($1,664.00). The defendant answered with essential admissions and denials and alleged twelve specific defenses.

Trial was to a jury. After plaintiff rested, the defendant moved for a dismissal of plaintiff's complaint. Rul-

ing on the motion was reserved. After defendant rested, it again moved for a directed verdict and renewed and incorporated therein its prior motion to dismiss. The motions were denied. The jury returned its verdict assessing plaintiff's damages at $827.00. Defendant thereafter filed a motion for judgment in accordance with the motion for a directed verdict pursuant to Rule 50 (b), R.C.P. Colo., and simultaneously filed a motion for a new trial. Both motions were denied and judgment for plaintiff in the sum of $827.00 duly entered.

Defendant assigns as error the denial of its motion to dismiss at the conclusion of plaintiff's case, and denial of its motion for a directed verdict at the conclusion of the evidence.

The essence of the plaintiff's charge is negligence: that the defendant in 1936 improved Stapleton Airfield and extended the improvements in 1948, thereby further obstructing the drainage course, resulting in damage to plaintiff's property from flood waters in July 1956; that the defendant knew, or should have known, in 1936 and in 1948, that its acts might cause such damage and should have installed a larger pipe.

The City of Denver has a legal as well as a natural easement for servitude on the lands downstream for drainage of surface water flowing in its natural course. 50 Am. Jur. 550, Sec. 68. If Denver was not negligent in the installation of the 63-inch pipe to carry the surface waters normally drained by Westerly Creek, and was not negligent in failing to foresee the probability of an unusual and devastating flood in 1956, there can be no liability on the defendant. *City of Boulder v. Boulder and White Rock Ditch and Reservoir Co.,* 73 Colo. 426, 216 Pac. 553.

The parties stipulated that the laying of the pipe and construction of the runway at Stapleton Airfield in 1936 was done by the Works Progress Administration according to plans and specifications. There is no evidence that Denver either prepared the plans or supervised the

operation provided for in the plans. The 63-inch pipe in question constitutes a part of the storm sewer system of Denver, and is a part of Stapleton Airfield facilities. The purpose of the 1936 pipe installation was to carry surface waters from the recently improved and enlarged air field, and to carry effluent from the then Aurora sewage disposal plant. This dual purpose continued until the condemnation action in 1948. The plaintiff does not charge or attempt to show that Denver was negligent in the installation or maintenance of the storm sewer, or in the enlargement or maintenance of Stapleton Airfield, its sole charge being that Denver negligently failed to foresee the danger of the 1956 flood and should have installed a larger pipe to prevent future flood damage.

By 1948 it was well known that during particularly heavy rains the intake of the 63-inch pipe retarded the flow of surface water and constituted a bottleneck, causing the surface waters to collect in a funnel-like formation and to back up on the lower elevations of the lands in question. The funnel-like formation and the bottleneck were natural conditions of Westerly Creek and existed in lesser proportions before the 1936 or 1948 installations, and had, after the installations, backed up flood waters on these lands to the approximate elevation of the 1956 storm, and would have continued to do so if the W. P. A. construction of 1936 and the extension in 1948 had not been made.

Since 1936 Aurora and the environs of what is now plaintiff's property had experienced a phenomenal growth with attendant paved streets and highways, air fields, residential and industrial buildings, which had rendered a great part of this drainage area impervious to moisture. During the same period, the surface of parts of Stapleton Airfield and other lands surrounding plaintiff's present property had been elevated. All this augmented the flow of surface water into the channel and thence into the 63-inch sewer pipe.

■ Into this situation came the plaintiff and, being cautioned of the peril from flood waters, and after thorough observation and investigation by its president, and upon mature consideration and recognition of the conditions attendant upon this drainage area, including the "funnel" and "bottleneck" therein, purchased the lands in this low area from the City of Aurora, on a lower portion of which was situated the then abandoned disposal plant which the plaintiff knew had been inundated many times by flood waters following the 1936 and 1948 installations. Being fully aware of the perils involved, and in order to protect itself against them, plaintiff filled in and elevated a portion of its upper lands and constructed an expensive factory, where it has successfully carried on its business since 1953 without the threat of water damage until July 1956 when flood waters backed into this lower property and inundated parts of the disposal plant structures, damaging some miscellaneous chattels and shrubbery in and near the plant.

■ In 1953 plaintiff's property was servient to the lands above it. It took this property fully aware of the impending and the inevitable damage that would occur on the lower levels of its property, and almost defiantly assumed the risk. In *Debevtz v. Ditch Co.,* 78 Colo. 396, 241 Pac. 1111, this court approved the following language of the trial court:

"The plaintiff purchased his land in the lowest point next to the Platte River and his land is burdened with the easement of carrying the water which naturally flows from all of the land above it."

The application of the above observation to the case at bar is obvious.

In *Aicher v. Denver,* 10 Colo. App. 413, 418, 52 Pac. 86, the following rule was announced:

" * * * It is a general doctrine in which the authorities almost universally concur, that a city is not bound to protect from surface waters those who may be so un-

fortunate as to own property which is below the general level of the street. If a person sees fit to erect improvements on land which is below the grade which the city authorities may establish, a failure on their part to provide for the drainage and disposition of surface waters, or the adoption of an imperfect plan for this purpose, or of insufficient drainways to carry off waters in case of excessive storms, as a rule impose on the city no liability. The party is bound to protect himself; to see that his improvements are above grade, and thus avoid any dangers and difficulties which may come from common or unusual storms. This whole subject is very exhaustively discussed in 2 Dillon's Mun. Corp., 1038, 1039, et seq. We know of no general rule of law which would permit the plaintiff to recover unless he has made a case which can be taken to be without this principle. This he has not done. * * * "

The plaintiff here, being aware of the flood danger inherent to its lands, carefully elevated and built above the flood danger, and thus avoided the drainage problems as it was bound to do. Had it taken the same precautions with the abandoned disposal plant, which was on a still lower elevation, it would have avoided the damage here complained of.

██ The plaintiff failed to sustain its burden of showing that Denver failed to use due care, or that it was negligent in failing to foresee that the 1936 and 1948 installations would be inadequate to carry the waters of a devastating storm to occur some twenty years later. The record affirmatively shows that any damage incurred by plaintiff was proximately caused by its incidental use of the disposal plant, knowing the inherent danger of doing so. The most favorable interpretation of plaintiff's evidence, assuming it to be true, fails to make out a prima facie case; hence, the court should have granted defendant's motion to dismiss, and it was error to submit the matter to the jury.

In view of our conclusion, other points urged in the

briefs and argument need not be considered. The judgment is reversed and the cause remanded with directions to dismiss the complaint.

MR. JUSTICE KNAUSS, MR. JUSTICE FRANTZ and MR. JUSTICE DOYLE concur.