No. 19,522.

CITY OF ENGLEWOOD *v.* GEORGE A. LINKENHEIL, ET AL.

(362 P. [2d] 186)

Decided May 22, 1961.

Mr. JOSEPH W. ESCH, for plaintiff in error.

Mr. ROBERT W. CLOSE, Mr. GEORGE F. HARSH, for defendants in error.

*En Banc.*

MR. JUSTICE DOYLE delivered the opinion of the Court.

THE parties will be referred to as they were desig-

nated in the trial court where defendants in error were plaintiffs and the City of Englewood was defendant. In the original complaints it was alleged that Englewood negligently caused storm damage on the land of the plaintiffs, the Linkenheils, and on that of co-plaintiffs, the Ostrouskys.

At the trial the plaintiffs were allowed to amend their complaints to allege:

" * * * that the drainage so provided by defendant amounts to an unlawful taking of plaintiffs' property without just compensation, contrary to the provisions of Article II, Section 15, Constitution of the State of Colorado."

After the plaintiffs had presented their evidence and while the trial court was engaged in considering the motions to dismiss on behalf of Englewood, counsel for the plaintiffs stated:

" * * * At this time for the purpose of clarification, we would like to state to the court that we wish to stand fully upon the theory of the Constitution, Article 2, Section 15, and that any allegations based upon negligence, we will at this time abandon."

The cause was submitted to the jury to determine damages, the issue of liability being determined against Englewood, and a verdict was returned in favor of the Linkenheils in the amount of $1650. Unaccountably the verdict was against the Ostrouskys. Englewood seeks review by writ of error of the judgment in favor of the Linkenheils.

The plaintiffs' properties are located between West Dartmouth and West Eastman Avenues. Both face Dartmouth which runs east and west along the north boundaries. The Linkenheil property is bounded on the east by a line which would be South Galapago Street if it were extended. The Ostrousky property is to the west of the Linkenheils', and it is bounded on the west by South Huron Street. A common driveway on the west side of the Linkenheil and the east side of the Ostrousky prop-

erty divides the two. This driveway is above grade, and in fact was raised by the parties themselves, and thus interferes with the natural flow of water. The Linkenheils' home is a frame house located in a low point of a natural drainage area, and their lot is at least three feet below the grade of West Dartmouth Avenue. The house is a five room structure, the basement of which has no ventilation whatever and has tended to flood, especially since the construction of a sump hereafter described. The property east of the plaintiff's has been building up over a period of years and much of this building has occurred since 1952. The improvements include a new school and many new homes.

At the time of establishing a new subdivision directly east of the Linkenheil property, the subdivider, a Mr. Corder, who does not appear in this action, constructed a concrete pipe from a catch basin on South Fox Street, a paved street one block east of South Galapago as extended. This catch basin is approximately 275 feet from South Galapago. At the terminus of the concrete pipe Corder constructed a sump, a concrete basin designed to collect the water and to spread it over a larger area. This sump is approximately five feet below the level of the surrounding land and is located partly on Corder's property and partly on the area which would have been South Galapago Street had it been opened. According to the testimony of Mrs. Linkenheil and Mr. Ostrousky, the pipe was laid in 1956 and the sump was built in 1957. However, Mr. Barde, city engineer of Englewood at the time, testified that the pipe and sump were completed in 1955.

Testimony by both plaintiffs and defendant showed that there were exceptionally heavy storms in the early part of May 1957, and during the summer of 1957, so that Little Dry Creek, southwest of the plaintiff's properties and the immediate destination of the drainage for the whole area east of the Linkenheils, overflowed its banks, flooding a large portion of Englewood.

Other testimony established that the plaintiffs' property has always been below the established grade of the surrounding streets and that an irrigation ditch starting at the southeast corner of plaintiffs' property had on occasion overflowed and inundated the rear of the plaintiffs' property. Furthermore, West Dartmouth, prior to its being improved in 1959, drained from its north side directly onto the property of the Linkenheils, it being three feet below the grade of the street. In 1959 the City of Englewood installed a curb and gutter and graded West Dartmouth so as to eliminate the flow from its north side.

Plaintiffs' testimony is designed to show that the city either constructed or caused to be constructed a system of drains, catch basins, intakes and pipes whereby all of the storm drainage water was collected from the entire area and piped to the sump located to the east of the plaintiffs' land and was disbursed over their lands to their detriment and damage, and as a consequence their property was taken without just compensation. Plaintiffs maintain that prior to 1957 their land was not flooded, but that since then it has occurred several times.

It further appears from the evidence that Mr. Linkenheil has lived in the house in question since the year 1925 and that Mrs. Linkenheil has resided there since her marriage in 1936. She testified that one of the improvements, the shed, was built in 1945. The undisputed evidence, plus the inferences to be drawn from a study of the maps and photographs, is that plaintiffs' property is situated at the lowest point in a natural drainage area encompassing approximately 17 acres or five city blocks. The property of plaintiffs is not only three feet or more below the grade of the street, it is approximately 14 feet lower than the high point of the area, and most of plaintiffs' land is adjacent to the creek which is and has been the draining agency for all of the waters from the entire 17 acre area. All such waters are eventually destined

for the South Platte River, which is somewhat west of the Linkenheils' property.

One factor which has contributed to the problem is the construction by the Colorado Central Power Company of a substation on the northwest corner of the Ostrouskys' property. The effect of this has been to interfere with the drainage from the Linkenheil and Ostrousky properties on the northwest side. When the Colorado Central built its improvements it installed an underground pipe designed to carry such water off, but the tendency of this pipe is to clog up, and this factor plus the fill put in by Colorado Central, bringing its property to grade, has resulted in a substantial interference with the drainage through both the Linkenheil and Ostrousky properties on the north or Dartmouth Avenue side. Drainage from the Linkenheil property has been obstructed somewhat by the driveway separating it from the Ostrousky property. The building up of this driveway to accommodate the vehicles of the Linkenheils and the Ostrouskys has created a barrier interfering with the westward drainage of water from the Linkenheils' property. That much of plaintiffs' problem is attributable to failure of drainage is apparent from testimony that following a heavy storm the water has remained on this land for several days or even weeks.

In seeking reversal, Englewood points to numerous alleged errors, but it is only necessary to give attention to the following contentions:

1. That plaintiffs knowingly purchased a low level property located at the bottom of a natural drainage area. Their lands were at all times servient to the property east of it and above it. The channeling of this water, even assuming that the city was the active agent, does not give rise to legal liability.

2. The plaintiffs failed to take any steps to alleviate the condition. They did not raise the level of their property or even seek to bring about drainage.

The theory upon which the plaintiffs seek to uphold the judgment is:

That the city constructed a system of drains, catch basins, intakes and pipes whereby all the drainage water in the area from Cherokee Street west to Fox Street between Dartmouth and Eastman is directed from a single pipe on Fox Street to a sump maintained by the defendant Englewood 20 to 30 feet from the east line of the plaintiffs' property; that the sump is located so that it overflows onto the land of the plaintiffs and thus substantially contributes to the plaintiffs' flood problem.

The trial court in effect held that the undisputed evidence established that Englewood was responsible for the plaintiffs' alleged injury, and instructed the jury that the maintenance and use of this system subjects Englewood to liability as a matter of law and that the only issue for its determination was the question of damages.

■ The issue which we are required to determine is that of the sufficiency of the judgment based upon Article II, Section 15 of the Constitution as applied to the facts and circumstances here presented. *Does the channeling of water from a higher area to a place contiguous to the land of the plaintiffs so as to overflow on the land of the plaintiffs constitute a taking within the cited constitutional provision?*

Plaintiffs rely on the following authorities: *Board of County Commissioners v. Adler,* 69 Colo. 290, 194 Pac. 621; *McMahon v. City of Telluride,* 79 Colo. 281, 244 Pac. 1017; *San Luis Valley Irrigation District v. Noffsinger,* 85 Colo. 202, 274 Pac. 827. In the *Adler* case the county had constructed a bridge across Platte River and in the course of construction had filled up certain channels of the river. As a consequence the water in flood times backed up and overflowed on the lands of Adler. The plaintiff pursued his claim under the constitutional provision here in question and it was held that he was entitled to recover notwithstanding there was no actual

taking of property, that the interference caused by the flooding was a sufficient taking to justify an award of damage. The other cases relied on also deal with injury or interference occasioned by public improvements. This line of cases is clearly distinguished from a drainage problem from higher to lower land such as is here presented.

There are authorities which recognize a right of action arising from the wrongful diversion of water from the natural water course through artificial means. See 56 Am. Jur. Waters, 570, Sec. 85, and the cases there collected. The problem in the case at bar is substantially different from that present in the cited cases. Here the plaintiffs' servient location plus lack of effective drainage is responsible for the unfortunate situation. Our cases are firmly committed to the modified civil law doctrine which subjects the servient owner to the burden of drainage of surface waters. A case clearly recognizing this doctrine is *City of Boulder v. Boulder and White Rock Ditch and Reservoir Co.,* 73 Colo. 426, 216 Pac. 553. There the City of Boulder had adopted a general plan for paving some of its streets and alleys and for constructing storm sewers. The drainage system was in accordance with the natural contour of the land in the city, that is, from northwest to southeast. One of the storm sewers discharged its water directly into the irrigating ditch of the plaintiff, and the plans called for construction of other sewers also discharging their contents into plaintiff's ditch. The plaintiff there sought an injunction and the trial court granted the relief demanded. This Court held that if the surface drainage would naturally and ultimately flow into the ditch if not obstructed, the owner of the ditch would have no claim arising from the fact that the waters were collected and their flow accelerated and that the same was precipitated or discharged toward the ditch. The highly pertinent language of the Court is as follows:

" * * * The court made no specific findings of fact

upon this issue, and, upon a rehearing, it should explicitly find whether or not this is such a natural drainage way, for, if it is and the plaintiff's grantors chose to use it in which to construct its ditch to carry water for irrigation, and if, as is admitted, the surface drainage would naturally and ultimately flow into this ditch, if not obstructed, it would have no cause of complaint merely upon the ground that the city of Boulder, in building storm sewers and paving and grading streets, collected this surface water and accelerated its flow and precipitated or discharged the same at some particular point or points in the line of the ditch, instead of spreading it out at different places of entrance. One of the officers of the plaintiff testified at the trial that so far, it was not the quantity, but the quality of water that had caused damage."

An earlier case also illustrative of the point is *Aicher v. City of Denver*, 10 Colo. App. 413, 52 Pac. 86. There the plaintiff constructed a sidewalk below the established grade of the street and erected improvements on his lot which was somewhat lower than the level of the sidewalk. The property in question was a natural drainage area. In holding that the city was not obligated to protect from the surface waters those who owned property below the level of the street, the Court said:

" * * * It is a general doctrine in which the authorities almost universally concur, that a city is not bound to protect from surface waters those who may be so unfortunate as to own property which is below the general level of the street. If a person sees fit to erect improvements on land which is below the grade which the city authorities may establish, a failure on their part to provide for the drainage and disposition of surface waters, or the adoption of an imperfect plan for this purpose, or of insufficient drainways to carry off waters in case of excessive storms, as a rule, imposes on the city no liability. The party is bound to protect himself; to see that his improvements are above grade, and thus avoid any

dangers and difficulties which may come from common or unusual storms. This whole subject is very exhaustively discussed in 2 Dillon's Mun. Corp., §§1038, 1039, et seq. We know of no general rule of law which would permit the plaintiff to recover unless he has made a case which can be taken to be without this principle. This he has not done. He has failed to show whether the track was on the grade fixed by the city, and he has likewise omitted to prove that this drainway was built by the city and imperfectly constructed."

The Court of Appeals distinguished cases where the grade or the course of the flow of surface waters is changed by the city, and the distinctions there made serve to show the difference in those cases where the city is liable and those where it is not:

"The first point for which the plaintiff in error contends, is that when the city attempts to care for, establish, or alter the grade of its streets and provide drains and culverts for the carrying off of the water, which prove inadequate, and there is resulting damage, it is necessarily liable. To support this contention, he relies very largely on the case of the *Rochester White Lead Company v. The City of Rochester,* 3 N.Y. Ct. of App. 463, attempting from it and some similar authorities to maintain that where a city undertakes to construct a drain or culvert for the disposition of water, they are responsible for its inadequacy, as well as for any defect in its construction. We are unable to concede that this authority is applicable. That was a case where the city of Rochester undertook to change, direct, and control the course of a natural stream, and built a culvert for the purpose of permitting the passage of water and controlling it within certain defined limits. There is a wide and marked difference in the principle which controls and measures the relative rights and duties of the municipality and the individual property owner in a case like this, and the one which is presented by the plaintiff's proof. In the *Rochester* case the question involved

related to the right of the city to interfere with a natural water-course, and its duty when it attempts to alter and control its bed and current. In the present, the only matter which would be involved, if a case had been made by the proof, is the responsibility of the city for changes in its streets which may so affect the flow, direction and drainage of surface waters as to occasion consequential damages to adjacent property. * * * "

██ Even assuming that the city was the responsible agent in the acceleration of the surface drainage in the instant case, and the record is far from satisfactory on this point, yet the plaintiffs do not bring themselves within the scope of the constitutional provision upon which they rely. They are within the doctrine that subjects the servient owner of land to a drainage easement in favor of those who are fortunate enough to own adjacent land on the higher level.

Our later decisions, *City and County of Denver v. Stanley Aviation Corp.*, 143 Colo. 182, 352 P. (2d) 291, and *Ambrosio v. Perl-Mack Construction Co.*, 143 Colo. 49, 351 P. (2d) 803, apply the philosophy of the *Boulder* and *Aicher* cases.

It is also to be noted that there are other factors contributing to plaintiffs' plight. These include the presence of the Colorado Central Power improvements at the northwest corner of the block in question, plus the built up drive between the Linkenheil and Ostrousky properties. Both of these obstructions have seriously interfered, according to the undisputed evidence, with proper drainage of the plaintiffs' lands. Also noteworthy is the fact that in the spring of 1957 there was a storm which deposited an extremely large quantity of water. This storm, plus others which occurred during this same season, accounts not only for the present litigation but also for that in the *Stanley Aviation* and *Ambrosio* cases.

██ Notwithstanding the seriousness of the problem, it is noteworthy that the plaintiffs here failed to take effective measures to protect their property by bringing

it up to grade, or constructing drainage facilities so as to minimize their recurrent damage, yet the burden, according to the authorities, is on one who constructs improvements on lands below grade to take appropriate steps to protect his property from flooding. See *Aicher v. Denver,* supra.

We are constrained to hold that the trial court erred in ruling that the undisputed evidence supported the plaintiffs' claim. The court should have granted the city's motion to dismiss.

The judgment is reversed and the cause remanded with directions to dismiss the complaint.

MR. JUSTICE FRANTZ concurs in the result.