**Metro DOCHEFF, Plaintiff-Appellee,**

**v.**

**CITY OF BROOMFIELD, a municipal corporation, Defendant-Appellant,**

**and**

**Empire Savings Building & Loan Association, a corporation, and Greenway Park, Inc., a Colorado corporation, Defendants.**

**No. 79CA0179.**

Colorado Court of Appeals,
Div. III.

Aug. 21, 1980.
Rehearing Denied Sept. 18, 1980.
Certiorari Denied Feb. 2, 1981.

Benjamin R. Loye, Wheat Ridge, for plaintiff-appellee.

Tallmadge, Tallmadge, Wallace & Hahn, P. C., David J. Hahn, Matthew D. Glasser, Denver, for defendant-appellant.

VAN CISE, Judge.

Defendant, City of Broomfield (the city) appeals a preliminary injunction prohibiting it from allowing excess drainage water generated in the Greenway Park Subdivision to be collected in the storm drainage system and then deposited on the land of the plaintiff, Metro Docheff. We affirm.

The material facts are undisputed. Plaintiff has owned and farmed his land since 1923. Until 1971, the land to the west was also farmed. Natural drainage was from the west in a sheet flow over plaintiff's land. The upper landowner constructed a berm and a ditch parallel to his boundary fence, and, as a result of this, almost no water flowed onto plaintiff's land.

In 1971, the farm to the west was sold to defendant Greenway Park, Inc. This land became a part of the city, and was platted as the Greenway Park Subdivision (the subdivision). The streets and avenues in the subdivision were dedicated, and the city approved the plat and the conveyance of the streets and avenues "subject to the condition that the city shall undertake maintenance [thereof] only after construction has been completed by the subdivider and accepted by the city." In 1974, the improvements having been completed in accordance with city standards, the city accepted for maintenance the curbs, gutters, sidewalks, pavement, and storm drains located in the subdivision.

With the development of the subdivision and the building of houses therein, water, in amounts greater than the previous natural flow, gathers in the streets, flows along curb lines to storm drain inlets, follows the storm drains to a collecting point on the east side of the subdivision, and is then discharged through an outlet pipe in a concentrated flow onto one portion of plaintiff's land, causing damage thereto. This flow is continuous during the period March through August.

Plaintiff had attended city council meetings and expressed his concern about drainage prior to the city's acceptance of the storm drain facilities. Later he complained, without success, that the concentrated flow of storm water and the lower quality "trickle or nuisance" flow (water from car washing, lawn watering, washing of greasy driveways, and melting winter snow carrying road salt) were ruining his crops and defacing his land. This action followed.

The trial court found that the city had accepted the streets and storm drains for maintenance and control and, therefore, had exclusive control over the water collected in the subdivision. It determined that by approving the subdivision and drainage plan and accepting control, the city interfered with the natural conditions and thereby caused surface water to be collected and discharged upon plaintiff's land "in a greater quantity or in different manner than had previously occurred under natural conditions." The court found that this flow of water onto plaintiff's land could be enjoined as a public nuisance because there was no speedy or adequate remedy at law. It held that, in the absence of an injunction, immediate and irreparable injury and damage would occur commencing in March. Therefore, based on the reasoning in *Los Angeles Brick & Clay Products Co. v. City of Los Angeles*, 60 Cal.App.2d 478, 141 P.2d 46 (1943), and injunction issued, effective March 1, 1979, enjoining the city:

"From allowing the excess drainage water that may be generated in this subdivision to be collected in the said storm drainage system and then depositing the same upon the Plaintiff's real property. Excess water is defined, for the purpose of this Order, as the trickle or nuisance water that flows from such subdivision in the absence of a rain, and also the volume of water that might be caused by the lack of saturation of the ground due to construction of asphalt streets, roofs of houses, etc. Further defined as water generated by this subdivision that is in excess of the historic flow as found herein above."

The court denied the motion for injunction against the developer, defendant Greenway Park, Inc., and the lender, defendant Empire Savings and Loan Association. That ruling has not been appealed.

## I.

We approve that granting of the injunction, but for different reasons.

■ The trial court improperly found the discharge of water to be a public nuisance. A public nuisance is not a nuisance caused by the public. Rather it is " 'the doing of or failure to do something that injuriously affects the safety, health or morals of the public, or works some substantial annoyance, inconvenience, or injury to the public.' " *Echave v. City of Grand Junction*, 118 Colo. 165, 193 P.2d 277 (1948).

■ However, regardless of compliance with ordinances and regulations, both business and residential uses are enjoinable in a proper case if they constitute a continuing trespass on the property of another. *Miller v. Carnation Co.*, 33 Colo.App. 62, 516 P.2d 661 (1973). "A landowner who sets in motion a force which, in the usual course of events, will damage property of another is guilty of a trespass on such property." *Miller, supra; Restatement (Second) of Torts* § 158.

■ Plaintiff's complaint claimed, *inter alia*, that the discharge of water was a trespass and constituted an unlawful taking. While a discharge in accordance with the natural flow is not a taking, *City of Englewood v. Linkenheil*, 146 Colo. 493, 362 P.2d 186 (1961), the discharge of drainage water under the circumstances here constitutes an enjoinable continuing trespass. *See Los Angeles Brick & Clay Products Co. v. City of Los Angeles, supra.* Although we recognize the right of the owner of higher land to a drainage easement over the lower land of others, *see City of Englewood v. Linkenheil, supra; Calvaresi v. Brannan Sand & Gravel Co.*, 35 Colo.App. 271, 534 P.2d 652 (1975), the discharge of water will be enjoined as a continuing trespass if the drain sends the water down "in manner or quantity to do more harm than formerly."

*Hankins v. Borland*, 163 Colo. 575, 431 P.2d 1007 (1967); *Johnson v. Kraeger*, 72 Colo. 547, 212 P. 820 (1923); *see Calvaresi, supra; Los Angeles Brick & Clay Products Co., supra.*

## II.

■ The city contends that an injunction was improperly granted because plaintiff had an adequate remedy at law. We do not agree.

Damages would be an inadequate remedy because the repetitious or continuous nature of the city's trespass would require a multiplicity of suits to determine the varying amount of damages. *See Miller v. Carnation, supra; Boglino v. Giorgetta*, 20 Colo.App. 338, 78 P. 612 (1904). Therefore, an injunction could issue.

Judgment affirmed.

PIERCE and BERMAN, JJ., concur.