Claire D. SCOTT, d/b/a Claire D. Scott Electric, Plaintiff–Appellee and Cross–Appellant,

v.

CITY OF GREELEY, Defendant– Appellant and Cross– Appellee.

No. 95CA1282.

Colorado Court of Appeals, Div. 2.

Nov. 7, 1996.

As Modified on Denial of Rehearing Dec. 12, 1996.

Doyle, Otis, Frey & Hellerich, LLC, Thomas E. Hellerich, Greeley, for Plaintiff–Appellee and Cross–Appellant.

Richard P. Brady, City Attorney, Jeffrey C. Parins, Deputy City Attorney, Greeley, for Defendant–Appellant and Cross–Appellee.

Opinion by Judge KAPELKE.

Defendant, the City of Greeley (the City), appeals from a judgment against it in a suit arising from storm sewer flooding which damaged the property of plaintiff, Claire D. Scott. The City claims immunity from liability under the Colorado Governmental Immunity Act (CGIA), § 24–10–101, et seq., C.R.S. (1988 Repl.Vol. 10A). Scott cross-appeals, contending that the trial court erred in failing to make a higher award of damages and in refusing to grant an injunction. We affirm.

The following facts were established at a bench trial. In 1974, the City formulated a Comprehensive Drainage Plan which called for the placement of a 42" storm sewer line throughout the length of the street adjacent to the property later acquired by Scott and down to the river. In 1985, the City placed a 42" pipe under a section of the street. However, the sewer renovation did not extend to the river, and the 42" line was instead connected to the pre-existing 15" line at a junction near Scott's property.

Scott's property, which he purchased in 1990, suffered flooding several times in 1991 and 1992. The water came from a storm sewer under the adjacent street, at a point where an upstream pipe of 42" diameter connected to a downstream pipe of 15" diameter. This condition of a large pipe feeding into a smaller one caused water to back up, or surcharge, through the storm drains and manhole cover, overtopping the curb and flooding the adjacent property.

In a memorandum in August 1991, one of the City's engineers acknowledged that the 42" pipe was "temporarily" connected to the existing pipe and that when the flow in the new 42" pipe exceeded the capacity of the old 15" pipe, flooding occurred. The engineer went on to state in the memorandum that completion of the storm sewer was necessary to eliminate the flooding problem.

In 1993, the City constructed a detention pond on leased property next to Scott's property, for the purpose of containing the surcharge. There was a conflict in the testimony at trial as to whether the detention pond has an adequate capacity to handle the runoff from a ten-year storm. Scott's property had not been flooded since the date of the pond's construction.

At trial, the City introduced "as-built" diagrams produced by the City's engineering department, dated September 1984, showing the design for the connection between the 42" pipe and the 15" one. Scott's engineering expert confirmed that the connection between the two pipes was constructed pursuant to this design and that the connection of the larger pipe to the smaller one caused the surcharge and attendant flooding.

At the close of Scott's case, the City moved for dismissal on the grounds of governmental immunity. The trial court found that the City had not constructed the storm sewer line in accordance with the 1974 comprehensive plan and that the 1985 line installation constituted improper operation and maintenance of the facility. The trial court therefore found a waiver of governmental immunity under the terms of § 24–10–106(1)(f), C.R.S. (1988 Repl.Vol. 10A) and denied the City's motion to dismiss.

Scott claimed $544,760 in damages, including cleanup costs, lost inventory, damage to his septic system, cost of storage and improvements to prevent flooding, lost rental income, and lost profits from the electrical business he conducted on the property. The court awarded Scott total damages in the amount of $77,220.

Scott also requested an injunction to require the City to complete the installation of 42" pipe down the length of the street next to Scott's property, extending to the river. The trial court denied the request for an injunction, finding that the detention pond constructed by the City was "adequate to prevent damage to Plaintiff in the future." This appeal followed.

## I.

The City contends that the trial court erred in applying the statutory waiver of governmental immunity for injuries caused by "operation and maintenance" of a public facility. We disagree.

## A.

■ The issue of sovereign immunity is one of subject matter jurisdiction, and we apply the clearly erroneous standard in reviewing the trial court's factual determination of the issue. *DiPaolo v. Boulder Valley School District*, 902 P.2d 439 (Colo.App. 1995).

■ Section 24–10–106(1), C.R.S. (1988 Repl.Vol. 10A) provides in part: "A public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort. . . ." This statutory immunity is in derogation of the common law and must be strictly construed. *Bertrand v. Board of County Commissioners*, 872 P.2d 223 (Colo. 1994).

■ Plaintiff's complaint—alleging negligent "design, construction, maintenance and operation" of the storm sewer which caused property damage—sounds in tort and thus falls within the CGIA's general grant of immunity, unless one of the statutory waiver provisions of § 24–10–106 applies. According to the supreme court, we are to interpret

these statutory exceptions to immunity narrowly in order to avoid imposing liability not provided for in the statute. *City & County of Denver v. Gallegos,* 916 P.2d 509 (Colo. 1996).

### B.

■ Scott contends, and the trial court ruled, that his claim is based on § 24–10–106(1)(f), C.R.S. (1988 Repl.Vol. 10A), which waives sovereign immunity for injuries resulting from "[t]he *operation and maintenance* of any public water facility ... [or] sanitation facility ... by such public entity." (emphasis added) In order for immunity to be waived, this subsection of the CGIA "only requires that a government be engaged in the operation and maintenance of a public water facility...." *City & County of Denver v. Gallegos, supra,* 916 P.2d at 512.

The CGIA defines "operation" as "the act or omission of a public entity or public employee in the exercise of the powers, duties and functions vested in them by law with respect to the purposes" of a public facility. Section 24–10–103(3)(a), C.R.S. (1988 Repl. Vol. 10A).

At trial, Scott demonstrated an act or omission by the City which caused his injuries: the connection of the 42" storm sewer pipe to the 15" pipe, or conversely, the failure to extend the 42" pipe all the way to the river. There is no dispute here that, in making the sewer connection, the City was exercising powers, duties, and functions vested in it by law. Moreover, there was no dispute at trial that the City actually "operates and maintains" the storm sewer in question.

Thus, we find no error in the trial court's ruling that the City's alleged acts and omissions regarding the storm sewer fall well within the broad definition of "operation" set forth in the CGIA, and that the waiver of § 24–10–106(1)(f) is thus applicable here. *See Burnworth v. Adams County,* 826 P.2d 368 (Colo.App.1991) (no immunity for county's "installation, operation and maintenance" of storm sewer).

### C.

■ In claiming entitlement to government immunity, the City argues that the injury here arose not from "operation" of the facility, but from a dangerous condition caused by a design flaw, for which immunity has been preserved under the statute. We are unpersuaded.

The provision cited by the City, § 24–10–106(1)(e), C.R.S. (1988 Repl.Vol. 10A), waives sovereign immunity for injuries resulting from "[a] *dangerous condition* of any ... public water [or] sanitation ... facility." (emphasis added) "Dangerous condition" is defined in § 24–10–103(1), C.R.S. (1996 Cum. Supp.) as:

a physical condition of a facility or the use thereof which constitutes an unreasonable risk to the health and safety of the public, which is known to exist and which condition is proximately caused by the negligent act or omission of the public entity in constructing or maintaining such facility. Maintenance does not include any duty to upgrade, modernize, modify or improve the design or construction of a facility.... *A dangerous condition shall not exist solely because the design of any facility is inadequate.*

(emphasis added)

This exclusion of design defects from the waiver of immunity for dangerous conditions, the City contends, is equally applicable to the facts here. Scott, on the other hand, points out that his claim is not based on the dangerous condition provision of § 24–10–106(1)(e), but rather on the "operation and maintenance" provision of § 24–10–106(1)(f). He urges that the waiver in the latter provision does not have an exception for claims arising solely from inadequate design of a facility.

However, because we conclude that the record supports the trial court's finding that the flooding did not result from an inadequate design, we need not address the statutory interpretation issue here.

As the trial court noted, the City's comprehensive plan in 1974 provided for installation of a 42" pipe all the way to the river. The damage to Scott's property did not result from any inadequacy of that plan but rather

from the City's having departed from it in temporarily connecting the new, larger pipe to the existing 15" pipe. Expert testimony at trial indicated that the flooding would not have occurred had the City followed through with its comprehensive plan to extend the larger pipe to the river. Although the City knew by no later than 1991 of the flooding problem caused by the pipe connection, it took no effective action to remedy it until 1993.

Under these circumstances, the record supports the trial court's determination that Scott's damages resulted from the City's operation and maintenance of a sanitation facility and were not solely caused by an inadequacy of design of the facility. The trial court thus properly concluded that the waiver of immunity in § 24–10–106(1)(f) was applicable.

## II.

█ The City next contends that the trial court erred in awarding damages to Scott, arguing that he assumed the risk of liability before he bought the property in question. We find no error.

█ Whether a plaintiff assumed the risk of injury is an issue of fact. *Oldham v. Roman*, 474 P.2d 169 (Colo.App.1970) (not selected for official publication). When evidence in the record supports a trial court's factual finding, it will ordinarily not be disturbed on review. *Associates of San Lazaro v. San Lazaro Park Properties*, 864 P.2d 111 (Colo.1993).

█ Section 13–21–111.7, C.R.S. (1987 Repl.Vol. 6A) provides in pertinent part that "a person assumes the risk of injury or damage if he voluntarily or unreasonably exposes himself to injury or damage with knowledge or appreciation of the danger and risk involved." Plaintiff must know the nature of the risk he undertakes and consent to it. *Summit County Development Corp. v. Bagnoli*, 166 Colo. 27, 441 P.2d 658 (1968); *Carter v. Lovelace*, 844 P.2d 1288 (Colo.App. 1992).

Here, conflicting evidence emerged at trial as to how much Scott knew about the frequency or cause of the flooding before he purchased the property in 1990. The trial court resolved this conflict in Scott's favor. As there is ample evidence in the record to support this determination, we have no occasion to disturb it on appeal.

## III.

█ Both the City and Scott, on his cross-appeal, urge us to re-evaluate the evidence regarding damages. The City contends that there should have been no award at all for lost profits. Scott argues that the trial court awarded him too little to compensate him for his property and business losses. We disagree with both contentions.

In fixing the amount of damages, the trial court is vested with wide discretion, and its award will not be set aside unless it is grossly and manifestly erroneous. *Allison v. Smith*, 695 P.2d 791 (Colo.App.1984).

"A claim for future profits may not be sustained by evidence which is speculative, remote, imaginary, or impossible of ascertainment." *Roberts v. Holland & Hart*, 857 P.2d 492, 496–97 (Colo.App.1993). However, where the fact of damage has been proven, a trial court should not refrain from awarding damages simply because the amount of damage is difficult to ascertain. *Peterson v. Colorado Potato Flake & Manufacturing Co.*, 164 Colo. 304, 435 P.2d 237 (1967).

Here, the trial court found, with record support, that Scott did suffer damage from the flooding, both to his property and to the profitability of his business. However, the court found that some of the calculations offered by Scott's expert witness were speculative and not supported by credible evidence. The court based its damage award on other evidence regarding the extent of Scott's business losses. We find no abuse of discretion in the court's award of damages.

## IV.

█ Finally, Scott contends in his cross-appeal that the trial court erred in not awarding him injunctive relief. Again, we find no error.

The grant or denial of an injunction lies within the sound discretion of the trial court and will be reversed only upon a showing of abuse of that discretion. *State ex rel. Woodard v. May Department Stores, Co.*, 849 P.2d 802 (Colo.App.1992), *modified on other grounds*, 863 P.2d 967 (1993).

An injunction is proper where it is shown that a plaintiff is threatened with repetitious or continuous injury from flooding. *Docheff v. City of Broomfield*, 623 P.2d 69 (Colo.App.1980). Here, however, the City constructed a detention pond in 1993 to contain the storm sewer surcharge, and there had been no flooding on Scott's property since. While Scott alleged that the pond had inadequate capacity to handle a major storm, his engineering expert testified that he did not know the capacity of the detention pond. Thus, we find no error in the trial court's conclusion that Scott had not demonstrated a need for injunctive relief to prevent future injury.

The trial court's judgment is affirmed.

STERNBERG, C.J., and PLANK, J., concur.