LARRY H. MILLER CORPORATION–DENVER, d/b/a Larry Miller Toyota; and Universal Underwriters Insurance Company, Plaintiffs–Appellants,

v.

BOARD OF COUNTY COMMISSIONERS, ADAMS COUNTY, Colorado, Defendant–Appellee.

No. 02CA0545.

Colorado Court of Appeals, Div. IV.

July 31, 2003.

Mendenhall DelPiccolo Ragland & Potrykus, Robert D. Mendenhall, Denver, Colorado, for Plaintiffs–Appellants.

James D. Robinson, County Attorney, Hal B. Warren, Deputy County Attorney, Brighton, Colorado, for Defendant–Appellee.

Opinion by Chief Judge DAVIDSON.

Plaintiffs, Larry H. Miller Corporation–Denver and Universal Underwriters Insurance Company, appeal from the judgment of the trial court dismissing their negligence claim against defendant, the Board of County Commissioners of Adams County, Colorado.

We affirm in part, reverse in part, and remand with directions.

This action arose out of the reconstruction of a highway off-ramp adjacent to a car dealership owned by Miller and insured by Universal. The Colorado Department of Transportation (CDOT) undertook the reconstruction. The pertinent underlying facts are set forth in a companion case. *See Larry H. Miller Corp. v. Urban Drainage & Flood Control Dist.*, 64 P.3d 941 (Colo.App.2003)(*Miller I*).

Plaintiffs' complaint alleged that the reconstructed off-ramp exacerbated flooding problems on the property in which Miller held a leasehold interest. Plaintiffs alleged that "the installation of the revised and elevated J–Z ramp, without the installation of the other improvements to control storm drainage, has altered the manner and amount of storm flows on the property and amounts to the improper operation and maintenance of a public water facility or sanitation facility." Plaintiffs asserted a negligence claim against Adams County, as well as other claims not relevant to this appeal.

Adams County filed a motion to dismiss, asserting that under C.R.C.P. 12(b)(5), plaintiffs' complaint failed to state a claim upon which relief could be granted. Adams County also argued that under C.R.C.P. 12(b)(1), plaintiffs' negligence claim should be dismissed for lack of subject matter jurisdiction under the Colorado Governmental Immunity Act (GIA), § 24–10–101, et seq., C.R.S.2002.

The trial court granted Adams County's motion to dismiss under C.R.C.P. 12(b)(5), finding that there was no clear expression of legislative intent in any statute providing that Adams County would be liable in negligence for failure to prevent CDOT from constructing the off-ramp without providing adequate flood control. Based on this disposition, the trial court did not resolve whether Adams County was operating or maintaining a public water or sanitation facility as plaintiffs had alleged, nor did it address whether Adams County had waived its sovereign immunity under the GIA.

On appeal, plaintiffs argue that the court's dismissal of their negligence claim was incorrect. We agree in part.

To determine whether a complaint sets forth a valid negligence claim against a governmental entity for breach of a statutory duty, a court must first decide whether the claim falls within one of the waiver provisions of the GIA and, if so, whether the plaintiff has a private tort remedy pursuant to the applicable statutes. *See State Dep't of Highways v. Mountain States Tel. & Tel. Co.*, 869 P.2d 1289 (Colo.1994); *State v. Moldovan*, 842 P.2d 220 (Colo.1992); *Miller I, supra.* Here, we conclude that, because pivotal factual disputes remain, the threshold issue of waiver under the GIA must be determined on remand by the trial court. If it is determined that Adams County was operating or maintaining a public water or sanitation facility as plaintiffs have alleged, we further conclude that plaintiffs have stated a valid claim for relief.

## I.

Whether Adams County has waived immunity under the GIA involves an issue of subject matter jurisdiction, which is properly resolved by the trial court under C.R.C.P. 12(b)(1). *See Medina v. State*, 35 P.3d 443 (Colo.2001). Under C.R.C.P. 12(b)(1), the trial court is the trier of fact and must determine whether the claim falls within one of the provisions waiving immunity. When there are disputed issues of fact, the trial court should hold an evidentiary hearing before ruling on the jurisdictional issue. However, if the facts are undisputed, the issue of subject matter jurisdiction is one of law, and we may decide the jurisdictional question based on the documents filed by the parties. *See Padilla v. Sch. Dist. No. 1*, 25 P.3d 1176 (Colo.2001)(when there is no evidentiary dispute, the trial court may rule on the jurisdictional issue without a hearing); *see also Johnson v. Reg'l Transp. Dist.*, 916 P.2d 619 (Colo.App.1995).

As pertinent here, § 24–10–106(1)(f), C.R.S.2002, provides that a public entity's immunity under the GIA is waived for injuries resulting from the entity's operation and

maintenance of a public water or sanitation facility.

Although there is no dispute that Adams County is a public entity, the parties contest whether Adams County constructed, owned, operated, and maintained the structures in question—a parking lot "detention pond," which collected stormwater on the Miller property, and the Page Gulch drainage system and subterranean concrete-lined channel. Furthermore, the trial court made no findings as to whether such structures constitute water or sanitation facilities under the GIA.

These unresolved factual issues are dispositive, and we cannot otherwise determine on the record before us if these structures are water or sanitation facilities or whether they were owned, operated or maintained by Adams County. *See Trinity Broad., Inc. v. City of Westminster*, 848 P.2d 916 (Colo.1993)(trial court acts as finder of fact to determine motion to dismiss under C.R.C.P. 12(b)(1)); *cf. Miller I, supra* (plaintiffs acknowledged that public entity had no ownership or proprietary interest in the property or drainage facilities at issue, and appellate court could determine the immunity question on the undisputed facts).

## II.

■ The effect of a waiver of immunity is merely to allow the liability of the public entity to be determined as if it were a private person. *See* § 24–10–107, C.R.S.2002. However, before a public entity can be held liable for injury resulting from obligations legislatively imposed and unknown at common law, a clear expression of legislative intent to create a private cause of action must be found. *See State v. Moldovan, supra; Springer v. City & County of Denver*, 13 P.3d 794 (Colo.2000).

In its motion to dismiss, Adams County contended that its enabling statutes, §§ 30–11–107 and 30–20–402, C.R.S.2002, which grant it the power to operate and maintain sewerage facilities, do not manifest the requisite legislative intent. *See* § 30–20–401(4), C.R.S.2002 (sewerage facilities are defined as "devices used in the collection, treatment, or disposition of ... storm, flood, or surface drainage waters"). The trial court agreed and dismissed plaintiffs' claims. Plaintiffs contend that this was error, and we agree in part.

■ Initially, we conclude that the permissive grants of power in §§ 30–11–107 and 30–20–402, which allow the county to construct, operate, improve, and extend storm water facilities and to levy taxes to finance the acquisition, construction, operation, improvement, and extension thereof, do not impose a mandatory duty to remedy a particular harm. *See Miller I, supra* (holding that statutes authorizing flood control district to operate and maintain flood control facilities did not impose a statutory duty to do so); *cf. Springer v. City & County of Denver, supra* (premises liability statute imposes direct duty on the city as a property owner); *State v. Moldovan, supra* (statute imposes express duty on division of highways to maintain fences adjacent to state highways).

Rather, Adams County is granted discretion regarding which properties to acquire, develop, and maintain for flood control purposes. *See* § 30–11–107(1)(u), (w), C.R.S. 2002 (authorizing county to expend money for the maintenance of drainage structures and facilities); § 30–20–402(1)(a), (f), (h), C.R.S.2002 (authorizing county to acquire property for sewerage facilities by various means, collect fees and issue bonds to finance sewerage facilities, and enter into and perform contracts with regard to sewerage facilities); *see also Miller I, supra* (noting that General Assembly's use of the term "may" is indicative of a discretionary power to choose among alternatives).

Similarly, because we discern no indication of a legislative intent to deviate from the plain meaning of the permissive terms used in Adams County's enabling statutes, we find plaintiffs' reliance on *People ex rel. Rollins v. Board of County Commissioners*, 7 Colo. App. 229, 42 P. 1032 (1895), and *Board of Supervisors v. United States*, 71 U.S. (4 Wall.) 435, 18 L.Ed. 419 (1866), which involved whether a local government was required to levy taxes to pay its debts, to be misplaced.

■ We also disagree with plaintiffs that Adams County had a common law duty to take affirmative steps to decrease the risk of flooding caused by CDOT's construction of the ramp or to implement certain portions of the master drainage plan prepared by the Urban Drainage and Flood Control District (UDFCD). We conclude that the trial court properly dismissed those portions of plaintiffs' complaint on the basis that, although Adams County had the discretion to construct a detention facility or implement the recommendations made by the UDFCD, it had no statutory or common law duty to do so. *See Bd. of County Comm'rs v. Moreland*, 764 P.2d 812 (Colo.1988)(no common law duty to protect plaintiff from injury prior to adoption of statute); *Miller I, supra* (no common law duty to acquire property or drainage systems).

■ Nevertheless, we conclude that once Adams County chose to operate and maintain a public water or sanitation facility, it had a duty not to do so in a negligent manner. *See Springer v. City & County of Denver, supra* (in determining whether city's immunity was waived, the court noted that a public entity may not avoid liability for negligently constructing or maintaining a building); *Docheff v. City of Broomfield*, 623 P.2d 69 (Colo.App. 1980)(city's storm drainage system flooding plaintiff's adjacent property constituted continuing trespass); *Salazar v. City of Sheridan*, 44 Colo.App. 443, 618 P.2d 708 (1980)(plaintiffs were entitled to sue the city for injuries incurred in an explosion of a storm sewer filled with methane gas because the city had a duty arising from its contractual acceptance of the responsibility for maintenance of the sewer entrance).

We read the statutory waiver of governmental immunity for damages resulting from the operation and maintenance of a public water or sanitation facility as an acknowledgment of such a duty by the General Assembly. *See* § 24–10–106(1)(f); *Scott v. City of Greeley*, 931 P.2d 525 (Colo.App.1996)(valid negligence claim against public entity when water backed up in storm sewer and flooded owner's property); *Smith v. Town of Estes Park*, 944 P.2d 571 (Colo.App.1996)(public entity properly sued for injuries resulting

from ice in cross-pan that was part of town's water drainage system); *Burnworth v. Adams County*, 826 P.2d 368 (Colo.App.1991)(valid suit against public entity for damages resulting from storm drain operated and maintained by the county).

Furthermore, the statutory definition of "operation" necessarily includes acts of commission and omission. *See City of Colorado Springs v. Powell*, 48 P.3d 561, 567 (Colo. 2002) (citing *Springer v. City & County of Denver, supra*, 13 P.3d at 801, and noting that "a public entity may proximately cause a condition not only by affirmatively creating it, but also by its omission in failing to reasonably discover and correct the unsafe condition").

Here, it is undisputed that Adams County was aware of the flooding problem on Miller's property and that it took no action to correct the problem. Plaintiffs alleged, inter alia, that Adams County could have enlarged the subterranean pipe, improved the capacity of the Page Gulch system, or constructed a new detention pond to accommodate increased storm flow and alleviate the concentration of floodwater on the property during peak rainfalls.

Assuming these structures are water or sanitation facilities under the GIA, and assuming that they were owned or operated by Adams County, to the extent that Adams County engaged in their operation and maintenance, it was required to exercise reasonable care in doing so. Consequently, it may be held liable for the breach thereof if it knew or should have known that a condition existed which involved an unreasonable risk of harm to plaintiffs and it failed to take reasonable precautions to correct such condition. *See Morrison v. City of Aurora*, 745 P.2d 1042 (Colo.App.1987)(city's act of providing specifications and design for pipe to be used in resolving floodway restrictions gave rise to a duty to design the pipe with reasonable care); *Salazar v. City of Sheridan, supra* (city's acceptance of the responsibility for maintenance of the sewer entrance created a duty to use reasonable care in doing so).

The judgment is reversed with regard to whether Adams County negligently operated and maintained a public water or sanitation

facility causing damage to the Miller property, and the case is remanded to the trial court with directions to reinstate that claim and hold an evidentiary hearing pursuant to C.R.C.P. 12(b)(1) to determine whether governmental immunity was waived and for additional proceedings as necessary. In all other respects, the judgment is affirmed.

Judge NIETO and Judge GRAHAM concur.