No. 20,054.

CHARLES H. CLARK, ET AL., *v.* JULIUS BEAUPREZ.
(377 P. [2d] 105)

Decided December 3, 1962. Rehearing denied January 7, 1963.

Messrs. GAUNT, BYRNE & DIRRIM, for plaintiffs in error.

Messrs. HUTCHINSON & HUTCHINSON, Mr. STANLEY A. BLACK, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE MCWILLIAMS.

BEAUPREZ sought and obtained an injunction against Charles H. Clark and Myrtle Clark which in general ordered them to cease and desist from discharging their underground water into Beauprez' irrigation ditch and thence onto his lands. By writ of error the Clarks seek reversal of that decree.

More specifically, the trial court's findings were, in part, as follows:

1. "The Defendants [Clarks] during the years 1954 and 1956 constructed and laid drain tiles below the surface of the land owned by them and developed waters from said land and collected the underground waters on Defendants' land into said tiles and diverted said waters from the natural flow thereof and *discharged the same at the Northeast corner of the land owned by the Defendants into a ditch running Easterly therefrom across the North line of the Southeast quarter of the Southwest Quarter of said Section 21* and discharged said waters into Plaintiff's [Beauprez'] irrigation ditch which runs Easterly through the West Half of the Southeast Quarter and the West Half of the West Half of the East Half of said Section 21 thence Southerly to the South line of Plaintiff's land. That none of the waters so collected by the Defendants and diverted and discharged as set forth above had ever theretofore been discharged

into the irrigation ditch of the Plaintiff and onto the Plaintiff's lands." (Emphasis supplied.)

2. "The water so diverted and discharged into said irrigation ditch of the Plaintiff seeps the irrigation ditch and lands of the Plaintiff and also overflows said irrigation ditch onto Plaintiff's land and will continue to do irreparable damage to the irrigation ditch and the lands of the Plaintiff.

3. "That said waters so developed, diverted and discharged as aforesaid are *not* discharged into any natural drain or waterway." (Emphasis supplied.)

Based on these findings the trial court ordered the Clarks "to cease and desist from discharging underground waters from their land. . . . into the irrigation ditch of the Plaintiff and onto Plaintiff's land" and enjoined them from continuing to so discharge their underground water. It is noted that the decree proper is broader and perhaps more all-inclusive than is justified by the findings. We interpret the decree, when viewed in the context of the findings of facts set forth, supra, to prohibit the Clarks from discharging their underground waters "at the Northeast corner of the land owned by the Defendants into a ditch running Easterly therefrom across the North line of the Southeast quarter of the Southwest quarter of said Section 21," and from discharging in this manner their underground waters into the Beauprez irrigation ditch.

Beauprez and the Clarks own land situate in Section 21, Township 3 North, Range 69 West of the 6th P.M., Beauprez owning 100 acres described as the West half of the Southeast quarter and the West half of the West half of the East half of the Southeast quarter in said Section 21, and the Clarks 40 acres described as the Southwest quarter of the Southwest quarter of said Section 21. Immediately to the North of the Clark property is a 40 acre tract belonging to one Dirks, which is described as the Northwest quarter of the Southwest quarter of Section 21. Immediately to the East of the Clark and

Dirks properties is an 80 acre tract belonging to one Hull, which is described as the East half of the Southwest quarter of the same Section 21.

The following diagram will assist in envisioning the geography and topography of the aforementioned properties, with certain of the physical characteristics being identified thereon.

The natural drainage of said Section 21 is generally from northwest to southeast and specifically is represented on the diagram by the curving line from G to H. The Beauprez irrigation ditch enters his property at C and then runs to B to D and leaves the property at point E. From A to B is a man-made ditch from 2½ to 3 feet

deep which cuts the Hull property in half and will hereinafter be referred to as the "Hull ditch."

It is agreed that all surface water from the Clark property drains in a generally northerly and somewhat easterly direction from the Clark land into a natural draw or swale on the Dirks property (From F to G). This natural draw then drains in a generally southeasterly direction across the Hull property and the Southwest portion of the Beauprez property. (From G to H).

For many years prior to 1954 there was on the Clark property an underground drain made of wood and such water as was caught by this wooden drain bubbled to the surface and flowed with the surface water off the Clark property into the aforementioned draw or swale on the Dirks land. However, this wooden drain was apparently not too effective. In any event about 10 acres of Clarks' land was seeped, marsh-like in character, and not capable of being cultivated. To remedy this situation the Clarks sought the aid of the U.S. Soil conservation Service. In 1954 with the assistance of that governmental agency the Clarks replaced the wooden drain with a modern and more efficient brick-tile drain which was about 3½ feet deep and which had its outlet in the immediate vicinity of the Northeast corner of the Clark property and extended some 500 feet therefrom in a southwesterly direction. To complete their reclamation program the Clarks in 1956 extended this brick-tile drain an additional 100 feet and also constructed two branch lines off the main line, each branch some 300 feet in length. Although the matter was in dispute, there was evidence that the underground waters thus collected were discharged by the Clarks into the so-called Hull ditch at point A. Clark conceded that even before he built the brick-tile drain, Beauprez made several verbal protests thereto, apparently fearful that the Clarks' underground water would find its way onto his property.

The Clarks' reclamation efforts were quite successful

and before long their 10 acre tract of marsh land "dried out" and was then placed under cultivation. But the gravamen of Beauprez' complaint is that this improvement was accomplished at his expense.

Beauprez testified that prior to 1954 there was no water in his irrigation ditch once the irrigating season was at an end, except for very limited drainage occasioned by natural precipitation. According to Beauprez, however, subsequent to 1956, when Clark completed his brick-tile drain, water in varying amounts was in his irrigation ditch almost the year around. Such water was said to be Clarks' underground water which had been discharged into the Hull ditch at point A and which was then carried through the Hull ditch and discharged into the Beauprez ditch at point B. Occasionally this water overflowed the ditch onto Beauprez' property, with the net result that his land was now tending to become "seeped" and marsh-like in character.

The Clarks complain that the trial court's findings are utterly unsupported by the evidence and in fact are exactly contrary thereto. It is the Clarks' "theory of the case" that their underground waters drain off their land in the same manner as do their surface waters, i. e. in a northerly and somewhat easterly direction into the natural draw or swale on the Dirks property, and thence flow southeasterly across the Hull and Beauprez properties. As the Clarks view it, this natural draw sort of "flattens out" on the Hull property so that the eastern part of the Hull ditch may carry some water into the Beauprez irrigation ditch.

Contrarily, Beauprez contends that the water under the Clark land flows in an easterly direction and that by means of the brick-tile drain the Clarks collect the underground waters, alter the direction of the natural flow by channeling them in a northeasterly direction, discharging the same in the Hull ditch at Point A. Under Beauprez' theory of the case this diverted underground water is carried through the Hull ditch into his irrigation ditch, the

Hull ditch intersecting the natural draw traversing the Hull property, but at the same time not intercepting any of the water drained therein. Beauprez makes no complaint about any of the surface waters draining off Clarks' land.

Careful review of the record convinces us that there is sufficient substantive evidence to support the essential findings of the trial court, set forth above.

■ Without reviewing the evidence in great detail, the witness Propp of the U. S. Soil Conservation Service testified that tests conducted by that agency convinced him that the water under the Clark property flowed in an easterly direction and that the brick-tile drain changed the course of these underground waters. There was ample testimony that the underground waters collected were discharged into the Hull ditch at point A — which Clark himself admitted on cross-examination. That the Hull ditch (from point A to B) is not a natural drain or waterway is not in dispute. In short there is ample evidence to support the finding of the trial court that the Clarks diverted the natural flow of their underground waters and discharged such waters, not in the natural drain or waterway, but rather into the Hull ditch.

The Clarks suggest that the instant case is governed by *Ambrosio, et al., v. Perl-Mack Construction Co., Inc., et. al.* 143 Colo. 49, 351 P. (2d) 803, where it was stated that "the owner of the upper or dominant estate has a legal and natural easement or servitude on the lower or servient estate for the drainage of surface waters flowing in its natural course and manner." Such presupposes a factual situation quite different from that posed by the instant case. Here, we are concerned with underground water which is not "flowing in its natural course and manner," but has been diverted from its natural course.

■ The Clarks conclude with the argument that the decree is "incapable of enforcement" and "impossible" for them to obey. This is based on the supposition that all they are doing is discharging their underground water

into the natural drain or waterway and it is strongly urged that such being the case, neither the trial court nor this Court can overrule Newton's law of gravitation and prevent "water from running down hill!" Such begs the issue. The trial court found that the Clarks were *not* discharging their underground waters into "any natural drain or waterway," but were discharging them at the northeast corner of their land into a man-made ditch, referred to herein as the Hull Ditch. We recognize, of course, there is a conflict in the evidence, not only as to acts and events, but also as to the terrain proper. However, there is evidence to support the findings of the trial court. Moreover, before finally disposing of the controversy the trial court without objection made a personal inspection trip of the properties involved. Under all these circumstances we are understandably reluctant to upset the findings of the trier of the facts. Indeed, we should not. See, for example, *Fryer & Stillman v. Denver Rendering Company*, 149 Colo. 173, 368 P. (2d) 421.

Accordingly, the judgment of the trial court is ordered modified so as to require Charles H. Clark and Myrtle Clark to cease and desist from discharging underground waters from their land "at the Northeast corner of the land owned by [said] defendants into a ditch running easterly therefrom across the North line of the Southeast quarter of the Southwest quarter of [said] Section 21," Township 3 North, Range 69 West of the 6th P.M., and enjoining them from continuing to so discharge their underground waters. The judgment as so modified is affirmed.

MR. JUSTICE MOORE and MR. JUSTICE SUTTON concur.