No. 20390.

ELTA ADAMS *v.* WALTER WEINGARTEN, ET AL.
(399 P.2d 774)

Decided March 8, 1965.    Rehearing denied March 22, 1965.

THOMAS C. SINGER, for plaintiff in error.

WOOD, RIS & HAMES, WORMWOOD, O'DELL & WOLVINGTON, for defendants in error.

*En Banc.*

MR. JUSTICE McWILLIAMS delivered the opinion of the Court.

ELTA ADAMS brought an action against Walter and Marie Weingarten, alleging that she and the Weingartens owned adjoining acreage in Adams County and that the Weingartens were so using their property as to damage her property. More specifically, Adams alleged that the Weingartens constructed a reservoir just north and east of her land and that thereafter water from this reservoir "seeped and overflowed upon plaintiff's land," all with resultant damage. In this connection Adams prayed for actual damages in the amount of $25,000, and also sought an additional $25,000 as exemplary damages, alleging that the Weingartens built the aforementioned reservoir in a most negligent fashion and that their negligence was attended by circumstances of fraud, malice or insult.

In a second count Adams averred that under her deed she was lawfully entitled to a reasonable amount of water from this same reservoir for her lawn and garden and that the Weingartens failed and refused to furnish this water to her.

By answer the Weingartens admitted the existence on their property of a "pond" which, according to them, had existed in the same location for over 40 years. They de-

nied, however, that water from this pond seeped or overflowed onto the Adams property with any resultant damage. As to the second count, the Weingartens admitted that Adams was entitled to a reasonable amount of water from the pond for the irrigation of her lawn and garden "to the extent that there is water available in said stock pond for such use," but denied that they had refused or failed to furnish Mrs. Adams with water for this limited use.

By way of a counterclaim the Weingartens sought to quiet title in and to a two foot strip of land, in which and to which Adams claimed some right, title or interest.

Trial was to the court, sitting without a jury, and culminated in a determination that Adams had failed to establish that water from the Weingarten pond was seeping or overflowing onto her property with resultant damage and that she had also failed to prove that she was being denied any water from this same pond to which she was entitled. With reference to the counterclaim, the trial court further found that the Weingartens had similarly failed to establish their right to have the title in and to this two foot strip of land quieted in them. By writ of error Adams now seeks reversal of the judgment dismissing her complaint and the Weingartens by way of cross-error urge that the judgment dismissing their counterclaim is erroneous.

It is the dominant and overriding position of Adams in this Court that this is an extreme instance where the trial judge in effect "missed the boat"; that his findings find *no* support in the record and, on the contrary, the record *compels* the finding that as a matter of law Adams did prove all of the essential allegations in both the first and second counts of her complaint. Let us examine the record.

There is the continuing intimation that the trial court tended to be somewhat cavalier in its handling of this matter and that it was too quick to conclude that this entire litigation could be resolved by an application

of the doctrine of *de minimis non curat lex*. We do not so read the record. The trial court heard, and apparently quite patiently, some dozen different witnesses and then with the approval of counsel even made a personal inspection of the premises involved. And despite vigorous assertions to the contrary, the testimony of the several witnesses *did* pose numerous controverted issues of fact. These we have repeatedly held are to be resolved by the trier of the facts, and not us.

As noted above, the dominant issue in this case is whether water from the Weingarten pond (or reservoir) is and has been overflowing and seeping onto the Adams property, thereby eroding it and also contaminating a well located thereon. The record clearly establishes that this pond has been in this same location for over 40 years. There was testimony that from time to time the pond was "cleaned out" and that it was so "cleaned and dredged" in May 1960. There was a difference of opinion as to whether more water was stored in the pond after May 1960 than before that time.

The record also affirmatively reveals that there were other possible sources of seeping water, if indeed there was such, besides the Weingarten pond. Specifically there was a nearby irrigation ditch located between the Weingarten pond and the Adams property which could have been the source of seepage and resultant erosion. Also Adams built a duck pond on her own property and, as might be imagined, it was strongly suggested by the Weingartens that the one hundred ducks which Adams kept on her property had something to do with any contamination of her well.

In any event Adams alleged, and accordingly it was *her* burden to prove, that the eroding of her land, if any, and the contamination of her well, if any, was caused by water seeping or overflowing from the pond or reservoir on the Weingarten property. No good purpose would be served by detailing the testimony of the several witnesses in this regard and it is deemed suf-

ficient to simply observe that the conclusion of the trial court that Adams failed to preponderate on these disputed issues cannot under the circumstances be disturbed. And the same general observation also applies to the second claim in the Adams complaint, as well as to the Weingartens counterclaim, i.e., in each instance the trial court sitting as the trier of the facts determined that the moving party failed to sustain its burden of proof.

Indeed this writ of error illustrates why this Court should not, indeed cannot, substitute its judgment for that of a trial court on a controverted issue of fact. As noted above, the trial court held, among many other things, that the Adams property was not damaged because of any water which seeped or overflowed from the Weingarten pond onto the Adams property. And yet we are asked to reverse this finding of fact and based upon the cold record before us to determine and decree that water *is* seeping or overflowing out of this pond onto the Adams property with resultant damage. In this respect the instant case is quite comparable to *Clark v. Beauprez*, 151 Colo. 119, 377 P.2d 105, where the trial court on the basis of conflicting evidence found and determined that certain underground water was flowing in a particular direction and we were asked to determine that it was flowing in a different direction. We declined to disturb the finding as made by the trial court in that case, and we now decline to do so in the instant matter.

The judgment is affirmed.