No. 18,897.

Victor E. Ambrosio, et al. *v.* The Perl-Mack
Construction Co., Inc., et al.

(351 P. [2d] 803)

Decided May 9, 1960.

Mr. A. E. Small, Jr., for plaintiffs in error.

Mr. Sheldon Silverman, for defendant in error The Perl-Mack Construction Co., Inc.

50

Mr. ROBERT L. McDOUGAL, for defendant in error The Florado Construction Co.

*En Banc.*

PER CURIAM.

PLAINTIFFS in error will be referred to as plaintiffs. The defendants in error will be referred to as defendants, except when reference to one of the defendants only is required.

The defendant, The Perl-Mack Construction Co. Inc., was the owner of a housing project acreage in Adams County. Drainage from the area flowed into Kalcevic Draw, a natural water course which traversed three separate parcels of land below the housing project. One of these parcels was owned by the plaintiffs. Prior to the improvement of the lands, Perl-Mack caused a proposed design for installation of a storm sewer to be engineered, presented the plans thereof, and made application to the County Commissioners and to the Adams County Planning Commission to install a storm sewer in the channel of Kalcevic Draw to drain the surface waters from its property. The plans called for the installation of a 42-inch tube — later changed to 72-inch — along the natural water course and to cast the flow into Kalcevic Draw upstream from plaintiffs' parcel of 2⅜ acres. After being duly informed, the County Engineer, the Board of County Commissioners, and the County Planning Commission of Adams County approved the plans for the sewer installation. In 1956, shortly after such approval, Perl-Mack installed the sewer in accordance with the approved plans. The housing units were built, the area landscaped, and the sewer put into operation.

The defendant, the Florado Construction Co., was likewise engaged in a housing project nearby, the surface waters from which latter project also flowed into Kalcevic Draw. Florado procured written permission to

connect, and did connect its newly installed sewer sys-
tem to the Perl-Mack storm sewer, and thus channelled
its surface waters into the latter's sewer system, and
finally discharged the same into Kalcevic Draw above
the properties of the plaintiffs in error and two other
groups of property owner-plaintiffs who appeared in
the court below.

In May, 1957, an unusually heavy rain fell upon both
projéct areas resulting in a heavy discharge of water
from the combined Perl-Mack storm sewer into lower
Kalcevic Draw, but above plaintiffs' parcel of land.

In July, 1957, plaintiffs and two other property owners
similarly situated filed their complaint in the district
court alleging that the Kalcevic Draw was a natural
water course running through their separate properties;
that the plaintiffs used water from such water course
for drinking water, irrigation, for livestock, and for other
purposes; that in 1956 the defendants had constructed
the storm sewer described above; that the same emptied
into Kalcevic Draw and burdened the water course with
more water in a concentrated mass at an accelerated flow
than would naturally reach the said Draw and by reason
of the acts of the defendants, the plaintiffs severally sus-
tained damages to their properties; that the defendants
were warned of the impending damage and that by the
exercise of reasonable foresight the defendants could
have guarded against such damages, and prayed for
separate damages and for an injunction.

The plaintiffs did not allege or prove negligence in
the installation or maintenance of the sewer, or at all.

Prior to the trial all claims, except for injunction,
against the defendant Florado Construction Co. were
dismissed by the court, it appeared that the alleged dam-
ages occurred after Florado connected its sewer to the
Perl-Mack system.

The defendants, by their answers, admitted the exist-
ence of the storm sewers and alleged that plaintiffs'
damages, if any, is damnum absque injuria; denied there

is any basis for injunction, and prayed the action be dismissed.

Trial was to the court. At the close of plaintiffs' case, on motion of the defendants, the Court dismissed the case, and found the facts and concluded as a matter of law substantially as follows: That the Kalcevic Draw is a natural channel for the drainage of water, and the channel was large enough to carry the water of the storm sewers; there was insufficient evidence to show that the damage claimed was caused by the installation of the storm sewer, the sewer only channelled the water. If there was any increase in the flow of water in the channel, the increase was slight and the same was caused by the improvements and not by the storm sewer installation; the defendant was under no duty to anticipate or guard against the asserted danger; there was no testimony that the flow of water exceeded the capacity of Kalcevic Draw; the upper and dominant landowner is not liable for damages arising from the acceleration of or increase in volume of surface waters except where the increase would tax the stream beyond its capacity; the defendants were following the directions of the county engineer; the plaintiffs failed to prove a case against the defendants. It is implicit in the court's findings that the defendants acted reasonably and with due care.

This matter is here for review by only one set of the three property owner groups who were in the court below.

As stated in the plaintiffs' brief, there are two questions to be determined on this review:

    (a) The issue of liability rather than the amount of recovery;

    (b) Whether plaintiffs are entitled to injunctive relief.

THE ISSUE OF LIABILITY OF THE DEFENDANTS.

       The defendants as owners of a dominant estate have a legal, as well as a natural easement for servitude on the lands downstream for drainage of surface water

flowing in its natural course and manner. In the present case the water flowed in its natural course down the Kalcevic channel; the conduit did not change the course nor materially change the manner of the flow. The rule is well stated in 56 Am. Jur. 550, Sec. 68:

"According to the doctrine of the civil law prevailing in England and many of the states, the owner of the upper or dominant estate has a legal and natural easement or servitude in the lower or servient estate for the drainage of surface waters, flowing in its natural course and manner; * * * "

This is the rule in Colorado and is noted as such in the footnotes following the foregoing statement in Am. Jur. where the case of the *City of Boulder v. Boulder and Whiterock Ditch and Reservoir Co.*, 73 Colo. 426, 216 Pac. 553, 36 A.L.R. 1458 is cited. The Boulder case was approved in *Debevtz v. Ditch Co.*, 78 Colo. 396, 241 Pac. 1111.

In *City of Boulder v. Boulder and Whiterock Ditch and Reservoir Co.*, Dry Creek was a natural water course which plaintiff had used for transporting irrigation water. The City of Boulder built storm sewers, some of which emptied into Dry Creek. Plaintiff sought to enjoin the City of Boulder from using Dry Creek as a place for discharging waters. The trial court found the issues for the plaintiff. This court in reversing the trial court stated:

"The defendant insists, and the evidence seems to sustain its position, that the plaintiff's ditch was constructed in, and that the same runs along the course of, a natural drainage way into which would naturally flow, if unobstructed, the surface water that falls upon the land within that part of the city of Boulder here affected. The court made no specific findings of fact upon this issue, and, upon a rehearing, it should explicitly find whether or not this is such a natural drainage way, for, if it is and the plaintiff's grantors chose to use it in which to construct its ditch to carry water for irrigation, and

if, as is admitted, the surface drainage would naturally and ultimately flow into this ditch, if not obstructed, it would have no cause of complaint merely upon the ground that the city of Boulder, in building storm sewers and paving and grading streets, collected this surface water and accelerated its flow and precipitated or discharged the same at some particular point or points in the line of the ditch, instead of spreading it out at different places of entrance."

The plaintiffs in their brief, quote from *Olney Springs Drainage Dist. v. Auckland,* 83 Colo. 510, 267 Pac. 605:

"A natural water course may be used as a conduit or outlet for the drainage of lands, at least where the augmented flow will not tax the stream beyond its capacity and cause the flooding of adjacent lands * * * 'one who attempts to gather into a drain or to maintain a drain for his own convenience is bound to take due care that no injury is done by it.' "

As herein noted, the defendants in the case at bar not only took "due care," but adopted precautionary measures as well and were free of negligence. This doctrine cited by Plaintiffs supports the defendants' position.

The rule announced in *Debevtz v. Ditch Co.,* supra, is applicable, where this court approved the following:

"The plaintiff purchased his land in the lowest point next to the Platte River and his land is burdened with the easement of carrying the water which naturally flows from all of the land above it."

██ Plaintiffs bought their tracts of land in a watershed below what finally became defendants' housing project locations. The defendants had a right to utilize their properties in urbanization utilities. They were further entitled to carry the surface water from their property, and in doing so, both defendants used reasonable and precautionary measures. The findings and evidence show that any damage that accrued from water arose from natural causes on lands above the plaintiffs' lands and flowed down into the natural water course. The

installation of defendants' sewer system did not materially increase the flow of water into the Kalcevic water course. The capacity of the water course was never seriously taxed by the flow of water from the defendants' sewer lines and housing projects. The defendants were owners of dominant estates and they had a legal and natural easement and right of servitude in plaintiffs' lower servient estate for the drainage of the surface water from defendants' properties. In disposing of the surface water as they did, the defendants acted lawfully under the modified civil law doctrine of dominant and servient estates as approved by this Court in *City of Boulder v. Ditch Co.* supra.

The facts in the case are expansive but generally undisputed, moreover the findings of the trial court are amply supported by the evidence and under the often repeated rule, we are bound by the findings of the trial court. *Olney Springs Drainage Dist. v. Auckland,* supra.

The trial court correctly resolved the issue of liability.

*WERE PLAINTIFFS ENTITLED TO AN INJUNCTION?*

▮ Having determined that there was no liability on the defendants under the circumstances shown by this record, no writ of injunction could properly issue to enjoin the acts of the defendants complained of. By syllogistic reasoning it follows that a continuation of the defendants' acts could not form the basis for an injunction.

The court was correct in denying the application for injunction.

The judgment is affirmed.

MR. JUSTICE FRANTZ dissents.

MR. JUSTICE HALL not participating.

MR. JUSTICE FRANTZ dissenting:

A judgment of dismissal was entered at the conclusion

of the plaintiffs' evidence. The trial court failed to view in its most favorable light the evidence adduced by the plaintiffs in support of their claim for damages resulting from the alleged over-burdening with water of a natural draw running through their land. This evidence disclosed that the land of defendant Perl-Mack Construction Company was dominant in that it lay on a higher level than plaintiffs' land; that defendant had developed it, putting in paved streets and curbs and constructing thereon many buildings.

There was testimony showing that the surface waters of about 60 acres in the area had been diverted to the draw. In its original state the draw varied in width from five to ten feet and could carry seven to eight feet of water. As a result of the change in the nature of the land as developed by defendant, and because of the diversion mentioned, water came down the draw in much greater volume and with an increase of acceleration, causing erosion of the draw and washing out a dam and lake. Erosion caused the draw to widen to twenty feet and to deepen to fifteen feet. Irrigation of plaintiffs' land had become impossible by reason of the destruction of these improvements and augmentation of the flow and increased acceleration.

The natural absorption of rain water by the soil in its original condition being lessened to a great extent by the roofs of dwellings and other structures and pavement, the gathering of these waters and of the water diverted from the 60 acres so increased the volume and speed thereof as to place an additional and more onerous burden on the servient land, a good part of which is the property of the plaintiffs.

Confronted with such testimony, the case should not have been dismissed on motion of the defendant. "A natural or prescriptive water course may be used as a conduit or outlet for the drainage of lands, at least where the augmented flow will not tax the stream beyond its

capacity and cause a flooding of adjacent land \* \* \*" 28 C.J.S. p. 343 §39 (c).

It is submitted that the law enunciated in *Olney Springs Drainage District v. Auckland,* 83 Colo. 510, 267 Pac. 605, should have been applied to the facts as presented by the plaintiffs. Whether plaintiffs made a prima facie case depends upon the applicability of the following language:

"A natural water course may be used as a conduit or outlet for the drainage of lands, at least where the augmented flow will not tax the stream beyond its capacity and cause the flooding of adjacent lands. 19 C.J. p. 685, §157. But, as said in Farnham on Water and Water Rights, p. 2555, 'There is no right on the part of one land owner to drain the water from his land over that of his neighbor without the latter's consent.' And further, at page 2697 of the same work: 'One who attempts to gather water into a drain, or to maintain a drain for his own convenience, is bound to take due care that no injury is done by it.' We agree with these statements as applied to the case at bar."

As I view it, this case lays down the test under which the plaintiffs made out a prima facie case.

It can hardly be denied that, if Perl-Mack had gone on the land of the plaintiffs with earth-moving equipment and widened the draw ten feet (thereby taking away ten feet of plaintiffs' land along the course of the draw), plaintiffs would have had a right of action for the damage done. That water rather than such equipment accomplished the removal of land should make no difference. This illustration points up the fallacy of the majority opinion.

The judgment should be reversed.