No. 21554.

HERBERT J. HANKINS *v.* MAUDE E. BORLAND.
(431 P.2d 1007)

Decided October 2, 1967.

CROSS and CHRISTENSEN, for plaintiff in error.

H. W. SEAMAN, CONRAD L. BALL, ROBERT C. BALL, ALBERT P. FISCHER, WARD H. FISCHER, JAMES D. BEATTY, for defendant in error.

*In Department.*

Opinion by WILLIAM L. GOBIN.*

WE refer to the plaintiff and defendant in error either by name or as defendant and plaintiff as they appeared in the trial court.

Maude E. Borland sued twenty-four defendants in the trial court to enjoin them from increasing the volume

---

*District Judge sitting under assignment by the Chief Justice under provisions of Article VI, Section 5(3) of the constitution of Colorado.

of water allowed to flow from their respective farm lands onto her lands. She claimed the volume was in excess of that which previously flowed thereon by virtue of an agreement between her and certain predecessors in title of some of the defendants. Mrs. Borland asked that the defendants be restrained from discharging any water unless and until the antiquated drain pipe on her land was repaired or replaced by the parties.

There was a six day trial to the court during which testimony was given concerning irrigation methods, quantity of water used, runoff, and topography of the various lands. Thereafter the court entered its extensive Findings of Fact, Conclusions of Law, Order, Judgment and Decree. It included an Injunction against seven of the defendants; however, defendant Hankins is the only one seeking reversal by this writ of error.

The situation giving rise to the action may be summarized as follows:

Hankins' farm lies immediately above and southwest of Borland's farm. Both farms are part of a natural drainage basin running from the southwest to northeast. This basin carries seepage and surface waters both from natural sources and from irrigation. The water flows from the higher lands of Hankins and other defendants in the trial court, the dominant owners, across the land of Borland, a servient owner.

The portion of the drainage system which crosses Borland's land consists of a 10 inch drain tile installed in 1922 and paid for by her and persons who were predecessors in title of defendants Sauer and Saulcy. The latter two are owners of separate farms higher in the drainage basin. Running close and parallel to this tile, and serving to drain some of the higher lands, is an open drainage ditch not a matter of contention in this action.

The portion of the drainage system on Hankins' land was installed prior to 1913 at the sole cost of his predecessors in title. It consists of a trough, a short open ditch, and a 15 inch tile which joins the 10 inch

tile drain crossing Borland's land and carries water from lands of other defendants, including Sauer and Saulcy. After several years, it appears that a portion of the original tile was broken and plugged and the water flowed for about 300 feet in an open ditch. This 300 foot section was replaced with 15 inch tile about 1960 by Hankins' predecessor in title.

Though no surface water from Hankins' farm enters the tile drain on Borland's land, a 6 inch tile drain on the west side and a 4 inch tile drain on the east side of Hankins' farm, both carrying seep water, join the 15 inch drain tile. This seepage thus goes into the 10 inch drain on Borland's land, and has done so for many years.

There was no unusual difficulty with the Borland 10 inch drain tile from 1922 until about 1957. Since then, however, water pressure has caused extensive "blow holes" and frequent seepage from breaks in the tile. Plaintiff contends that this has been due to the increased quantity of water which became available about 1956 from the Northern Colorado Water Conservancy District through the Colorado Big Thompson project and from the fact that about 1960 Hankins' predecessor put drainage tile in about 300 feet of what had been open ditch prior to that time — thereby increasing water pressure in the enclosed tile.

A water engineer, called as an expert witness, was of the opinion that the installation of a 15 inch tile in place of the 10 inch tile on the Borland farm would solve the difficulty. The court concluded from the statements of counsel that the plaintiff had no objection to such installation.

The court found that though the drain on plaintiff's farm was adequate when installed, as of later years it had been allowed to fall into disrepair and became overloaded. Also, while there may have been an agreement by Sauer's and Saulcy's predecessors to maintain the tile across Borland's place, it was inherent in the use by those who were above plaintiff's land to maintain the

drain in such a condition as to enable it to fulfill its function, all without injury to her land. Further, that they had the duty to repair the drain and should be enjoined from further use of the drain unless and until it is properly repaired or could be operated without injury to plaintiff.

The court further found that there were contributing factors to the failure of the plaintiff's drain. Among these were various underground drains and tiles that had been installed in recent years by Hankins and other defendants, which resulted in a flow of water in quantities greater in volume and more concentrated in time.

The court held the defendants' contention that by long adverse use they had acquired the right to continue their acts to be without merit. It based this on lack of sufficient or satisfactory evidence that the actions of the various defendants were brought to the attention of, or were such acts that were or could be known to, the plaintiff, thus there was no open and notorious use. Further, the court held that in 1957 there began an increased use of water in the area through the Colorado Big Thompson project so that the plaintiff's drain now and in recent years has become so overloaded that it is incapable of carrying the water sought to be discharged into it, and that each defendant had increased the flow of water into the drain.

As a result of these findings the court enjoined Sauer and Saulcy from discharging any water into the plaintiff's drain until it was repaired or replaced by them so as to render it capable of carrying water without injury to plaintiff's land. It also ordered the other defendants, including Hankins, to remove and plug all drains upon their respective properties, which drains now contribute to the damage complained of.

The court provided that any defendant would be relieved from the injunction by agreeing with defendants Sauer and Saulcy and the plaintiff to pay his pro rata share of the costs of repair or replacement and main-

tenance of the Borland drain, and upon the filing of such an agreement, approved by the court.

The court retained jurisdiction to determine the questions of construction and contributions as between such defendants who might elect to participate in some type of common drainage system. Any defendant who elected to have the court resolve the controversy would be bound by the ultimate determination of the court. The court stated that the hearings were to be in the *nature of arbitration without right of appeal therefrom.*

A voluntary stay of execution of the injunction has been in effect pending the determination of this matter on writ of error. Although there have been attempts to settle this dispute by agreement among the parties for reasons unknown, such attempts have failed.

Hankins advanced several grounds for reversal; however, we will mention only those requiring comment.

First, Hankins states the trial court ignored the principle of law that an upper owner has the right to dispose of seepage water on the land of a lower subservient owner provided the drains disposing of such seepage water do not send it down in a manner or quantity to do more harm than before the drains were laid.

The modified civil law rule which has been adopted by Colorado has been summarized as follows: Natural drainage conditions may be altered by an upper proprietor provided the water is not sent down in manner or quantity to do more harm than formerly. *City of Boulder v. Boulder and White Rock Ditch and Reservoir Co.,* 73 Colo. 426, 216 P. 553. See also *City and County of Denver v. Stanley Aviation Corporation,* 143 Colo. 182, 352 P.2d 291; *Ambrosio v. Perl-Mack Construction Co.,* 143 Colo. 49, 351 P.2d 803; *Debevtz v. New Brantner Extension Ditch Co.,* 78 Colo. 396, 241 P. 1111.

The law protects the right of Hankins to have the natural drainage from his land run across Borland's land. The court, having seen and heard the witnesses, found, however, that the combined water from Hankins

and other defendants was sent down in a manner and quantity to do more harm than it formerly had done or in amounts in excess of natural amounts — a finding we will not disturb. The court properly determined that plaintiff was entitled to relief on this account.

Hankins next contends that the drains on his land have been in existence and operation for a period much longer than the prescriptive period of eighteen years — in a manner to meet the requirement of an easement by prescription. The trial court, however, found to the contrary.

Again the law is that such a right may be acquired by prescription. *Feit v. Zoller,* 155 Colo. 64, 392 P.2d 593; *Rogers v. Lower Clear Creek Ditch Company,* 63 Colo. 216, 165 P. 248; *Yunker v. Nichols,* 1 Colo. 551; 56 Am. Jur. 631.

Here the evidence is that the 15 inch drain on the Hankins' land has been an integral part of the drainage system of Sauer, Saulcy and Hankins, crossing the Borland land at least since 1922. To urge, as is done here, that Hankins and his predecessors in title used this drain, which joins the Borland drain, for this long period of time without plaintiff's knowledge is not only contrary to the evidence but challenges our credulity. Although Hankins has a prescriptive right to use the Borland drain tile, which supplements his right to drain surplus waters onto the Borland farm, with this right goes the duty to assist in the maintenance and repair of the Borland drain so as not to damage the Borland farm.

Hankins further contends that he and his predecessors in title, in disposing of their seepage water since prior to 1922 into the Borland drain, have thereby committed a continuing trespass. It is urged that such adverse use is subject to the six year statute of limitations which begins from the time the trespass was first committed, and not from the time the full extent of the injury was ascertained. The applicable law in this regard is that the right to sue for damage from seepage

is barred by the six year statute of limitations with the cause of action accruing at the time the land is first visibly affected by the seepage. *Rose v. The Agricultural Ditch & Reservoir Co.,* 70 Colo. 446, 202 P. 112. See also *Seven Lakes Reservoir Co. v. Majors,* 69 Colo. 590, 196 P. 334.

■ The increased drainage concerning which Borland complains here, however, was first apparent during the irrigating season or summer of 1957. The exact time is not shown. This action was filed February 5, 1963. If there was a trespass by Hankins, less than six years have transpired from the time it began until the time this suit was commenced. And, of course, the trespass would involve only drainage in excess of the rights which Hankins already had. Any right to release more than previous customary drainage without the corresponding responsibility to maintain a proper drain on the Borland farm could not have been acquired by operation of the six year statute of limitations. In our view the trial court properly so determined in favor of Borland.

Hankins also urges that the decree of the trial court grants to the upper owners, Sauer and Saulcy, the right to use a 15 inch tile across Hankins' farm which the same decree has directed Hankins and others to remove or plug. It is claimed that such action will result in flooding and seeping of that portion of both the Hankins and Borland lands which occupies the natural drainage area. This complaint is well taken and on remand the trial court should correct its ruling and judgment in this regard.

Finally, Hankins contends that if the law is in accordance with the pertinent portion of the decree of the trial court which enjoins him and other defendants from discharging any waters into the Borland drain, the effect will be either to make all irrigation impossible, or at least all of the usual methods of farming and irrigation which have been employed since the commencement of farming activities in Colorado.

As above stated, Hankins is entitled to have the natural drainage from his land run across the Borland land, provided it is not sent in a manner or quantity to do more harm than it formerly did. To require him to plug all drains on his land unless he complies with the prescribed judicial conditions, which his counsel have stated he is unable to meet, is unreasonable. For instance, forcing an agreement with Sauer and Saulcy, or forcing Hankins to submit to an arbitration from which there is no appeal, prevents him from exercising his acknowledged right to have natural drainage from his land go across the Borland land. Such imposed conditions might also prevent Sauer and Saulcy from disposing of their natural drainage through Hankins' land thence through the Borland land — a drainage system which has been in use for many years prior to this dispute.

The trial court has found that the water which these defendants have sent into the Borland drain is in greater quantity and more rapid in time — a finding fully justified by the evidence. Under such circumstances it is the court's duty to determine what the dominant owners must do in order to prevent their increased waste water from damaging the servient owner. The trial court properly retained jurisdiction for these purposes, even though some of the conditions, as noted, are improper. Here it is appropriate for the trial court to give the dominant owners — Sauer, Saulcy, Hankins, and any other trial court defendants using the Hankins and Borland tile drains — such time as the court may deem reasonable in which to reach an agreement with the servient owner.

If, after a reasonable time, an agreement has not been reached, the trial court should hold additional hearings to determine what must be done by all the dominant owners by way of replacement, repair, and maintenance, to put the servient drain tile in such condition as will carry off drainage in a manner so as not to injure the

Borland land. The proportionate share to be paid by each dominant owner for this work shall also be determined by the court. If, after such a determination, the dominant owners fail, neglect, or refuse to make the replacement, repairs, or maintenance, ordered by the court, it will be appropriate for the trial court to enjoin the dominant owners from use of the servient drain unless and until such replacement, repair, or maintenance has been accomplished as directed.

We, therefore, affirm those portions of the Findings of Fact, Conclusions of Law, Order, Judgment and Decree, as are consistent with the views expressed herein, and we reverse so much thereof as is contrary to such views, remanding the matter to the trial court for action consistent with the determinations here made.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE SUTTON and MR. JUSTICE PRINGLE concur.