534 P.2d 652 (1975)
Archie CALVARESI et al., Plaintiffs-Appellees,
v.
The BRANNAN SAND & GRAVEL COMPANY, a Colorado Corporation, Defendant-Appellant.
No. 74-179.
Colorado Court of Appeals, Div. II.
February 4, 1975.
Rehearing Denied March 4, 1975.
Certiorari Denied May 12, 1975.
*653 Gavend, Sullivan & Bryans, Richard B. Gavend, David M. Bryans, Denver, for plaintiffs-appellees.
Saunders, Snyder & Ross, P. C., Glenn G. Saunders, W. B. Tourtillott, Jr., Denver, for defendant-appellant.
Selected for Official Publication.
VanCISE, Judge.
Defendant Brennan Sand & Gravel Company (Brannan) appeals from a judgment (1) enjoining it from interfering with or obstructing the natural flow of water from land owned by plaintiffs Archie and Virginia Calvaresi (Calvaresi) through an existing pipe and drainage system onto the Brannan land, and (2) requiring Brannan (in the event it raises the level of its land) to provide and maintain a drain by open ditch or culvert over its land in order that the water from the Calvaresi land may flow into Clear Creek. We affirm the granting of the injunction, but the judgment must be modified to include a legal description of the easement and to delete the requirement that Brannan must provide maintenance.
Viewing the evidence in the light most favorable to the prevailing parties, the pertinent facts are as hereinafter set forth. Brannan's property, approximately 64 acres of land, is immediately north of Clear Creek on the west side of Federal Boulevard. The Calvaresi property, approximately 42 acres of land, is adjacent to and north of the Brannan property and also borders on Federal Boulevard. The natural drainage from the Calvaresi land is to the south and east across the Brannan property into Clear Creek. There is a natural depression or draw on the south side of, and about 400 feet west of the east boundary of the Calvaresi property into which the water from that land and from adjacent land to the north and west collected. From this draw or depression, the water normally passed onto the Brannan land, and ultimately into Clear Creek. The court found this condition to have existed for at least 30 to 35 years before this lawsuit commenced.
The Brannan property was excavated for gravel from the 1920's through the 1940's. Removal of the sand and gravel created two lakes. Water form the Calvaresi land proceeded through the draw into these lakes which then drained through a culvert (C-3) under Federal Boulevard *654 about 300 feet south of the Calvaresi land and ultimately into Clear Creek. This culvert has existed since some time in the 1920's.
From 1950 to 1960, the Calvaresi land was excavated for gravel and several lakes resulted. Water from the Calvaresi land, and from the area to the north and west thereof, continued to drain through the draw into Brannan's lakes and through C-3 into Clear Creek.
Thereafter, the plaintiffs (Calvaresi and lessee Aloha Beach Company) constructed a beach and other recreational facilities along the shore of their lakes. At this time, and without augmenting or changing the direction of the flow, they installed a culvert (C-1) through which the water from their land and lakes drained into the Brannan land to the south. After Brannan built a road across the north side of its property at a level higher than the then level of the Calvaresi land, a culvert (C-2) was installed by Calvaresi under the road to enable water from their land to pass unimpeded into the Brannan lakes.
This situation continued, with the drainage following its natural course south and then east across the Brannan land and under Federal Boulevard through C-3 until about 1971. Brannan then began to fill in a portion of its lake adjoining Federal Boulevard and blocked C-3, cutting off the drainage from Calvaresi's land into Clear Creek. Brannan plans to fill in both of its lakes to allow use of the surface of the land. Unless a channel is kept open, this will block the draining of water from Calvaresi's land, thereby causing their lakes to rise and their adjacent buildings to be damaged.
Plaintiffs brought this action in 1972 to enjoin Brannan from blocking the natural flow of water from the Calvaresi land onto and over Brannan's land. The court concluded that Calvaresi owned the dominant tenement and therefore had an easement for drainage over and through the Brannan land, the servient tenement. It further concluded that Brannan had interfered with that easement and would continue to do so unless restrained by the court. It then entered the judgment summarized in the opening paragraph of this opinion.
Brannan does not dispute the general proposition that higher land is the dominant tenement and adjacent lower land is the servient tenement with respect to drainage of surface and subsurface water. However, it contends that the rule granting a natural easement over downstream land for drainage of water from the upstream property applies only in rural as contrasted to urban areas, and only so long as the land exists in its natural undisturbed state. Brannan contends there is no longer any easement over its property in favor of Calvaresi because the land is no longer rural but is now urbanized, and that, as a result of the excavations, neither of the properties is in its natural state, and also because, after the excavating and prior to Brannan's filling operations, both properties were at an elevation lower than their natural state. It proposes that it can now do with its land as it sees fit, regardless of damage to the Calvaresi land. We do not agree.
Colorado has always followed the "civil law rule," which provides that the owner of upstream property possesses a natural easement on land downstream for drainage of water flowing in its natural course. Ambrosio v. Perl-Mack Construction Co., 143 Colo. 49, 351 P.2d 803. Also, "[n]atural drainage conditions may be altered. . . provided the water is not sent down in manner or quantity to do more harm than formerly." Hankins v. Borland, 163 Colo. 575, 431 P.2d 1007; City of Boulder v. Boulder & White Rock Ditch & Reservoir Co., 73 Colo. 426, 216 P. 553; see Johnson v. Johnson, 89 Colo. 273, 1 P.2d 581 and Johnson v. Kraeger, 72 Colo. 547, 212 P. 820. Neither the fact that the land concerned is urban rather than rural, nor the fact that the elevation on both properties has been lowered without materially altering the natural drainage flow, affords a rational basis for creating *655 exceptions to the general rule. Colorado cases on water drainage have drawn no such distinctions. See Englewood v. Miller, 155 Colo. 47, 392 P.2d 591; Englewood v. Linkenheil, 146 Colo. 493, 362 P.2d 186; Ambrosio v. Perl-Mack Construction Co., supra; and City of Boulder v. Boulder & White Rock Ditch & Reservoir Co., supra.
Englewood v. Miller, supra, a case involving urban land substantially changed from its natural state, did not support any special rule because of these factors, and, instead, stated the rule to be:
"In a proper case, the court will and should issue a mandatory injunction for the opening of an easement which has been blocked. . . . In order to obtain the relief asked for here [an injunction against defendant ordering her to open and keep open the natural drain course across her property for the natural flow of water], however, it was incumbent upon the City to show that the water would naturally flow, if unobstructed, across the defendant's property."
The evidence here supports the court's conclusion that the drainage from the draw through C-1 and C-2 and thence over Brannan's land to and through C-3 under Federal Boulevard and on to Clear Creek has followed this same course for 30 or 35 years and that Brannan has obstructed this flow. Hence, the finding of an easement is supported by the evidence and is binding on review. Ambrosio v. Perl-Mack Construction Co., supra.
Brannan further claims a right and even a duty, when its land is below the level of Federal Boulevard, to take all steps necessary to protect its own land from being flooded by raising the grade to the street level. It cites as authority for that contention Englewood v. Linkenheil, supra, and Aicher v. Denver, 10 Colo.App. 413, 52 P. 86. Those cases, however, are actions in which a landowner unsuccessfully attempted to recover from the city for damage to improvements caused by surface water draining onto land below the level of a street constructed by the city. The rule stated in both cases was "that a city is not bound to protect from surface waters those who may be so unfortunate as to own property which is below the general level of the street." Linkenheil reaffirms the doctrine applicable here, "that subjects the servient owner of land to a drainage easement in favor of those who are fortunate enough to own adjacent land on a higher level."
Plaintiffs are entitled to a decree enjoining Brannan, its agents, representatives, employees, successors in interest, and assigns from interfering with or obstructing the drainage of water from plaintiffs' realty onto and over the realty of Brannan. However, the course of the easement need not be the exact course used before 1971, so long as it starts at C-1, adequately drains the water from the Calvaresi property across Brannan's land, ties into the drainage system for Federal Boulevard, and does not extend a materially longer distance than the pre-1971 course. Within these limits, and subject to approval of the trial court, Brannan is entitled to channel the flow as it sees fit. The legal description of the proposed course shall be furnished by Brannan to the trial court within a time to be fixed by the court, and, on its approval, shall be included in the modified injunction. See DeReus v. Peck, 114 Colo. 107, 162 P.2d 404.
Brannan is responsible for the initial clearance of the former channel, or if a new course is elected, for the initial construction thereof. Thereafter, the responsibility will be on the plaintiff for replacement, repair and maintenance to keep the channel in such condition that it will carry off drainage in a manner so as not to injure further the servient land, and the plaintiffs shall have a reasonable right of access thereto for this purpose. See Shrull v. Rapasardi, 33 Colo.App. 148, 517 P.2d 860. If the trial court determines that, in addition to water from the dominant property, water from Brannan's land is entering the drain, then the court shall apportion *656 the maintenance work or the cost thereof to be performed or paid by each owner. The trial court should retain jurisdiction of this matter to enter such orders as may from time to time be appropriate to carry out the purposes of this mandate. See Hankins v. Borland, supra.
We therefore modify the judgment to incorporate the foregoing provisions and, as modified, affirm. The matter is remanded to the trial court for action consistent with the determinations here made.
ENOCH and BERMAN, JJ., concur.