Richard E. HARGREAVES; John M. Harrison; Harlan Wagoner; John Haley; H & H Quality Enterprise Inc., a Colorado Corporation; Longmont Home Improvement, Inc., a Colorado Corporation; and Longmont Soil Conservation District, Plaintiffs-Appellants and Cross-Appellees,

v.

Phil G. SKRBINA; Phil G. Skrbina, Inc., a Colorado Corporation; the City of Longmont, a Colorado Municipal Corporation, Defendants-Appellees,

and

Kenneth A. Williamson; Connie S. Williamson, Defendants-Appellees and Cross-Appellants.

No. 79CA0244.

Colorado Court of Appeals,
Div. I.

April 16, 1981.

Rehearing Denied May 28, 1981.

Certiorari Granted Oct. 5, 1981.

French & Stone, Joseph C. French, Robert W. Stone, Gary S. Mallo, Boulder, for plaintiffs-appellants and cross-appellees.

No appearance for defendants-appellees Phil G. Skrbina and Phil G. Skrbina, Inc.

Yegge, Hall & Evans, David R. Brougham, Denver, Schey & Schey, Walter J. Hopp, Longmont, for defendant-appellee The City of Longmont.

John G. Canny, Denver, for defendants-appellees and cross-appellants Kenneth A. Williamson and Connie S. Williamson.

COYTE, Judge.

Plaintiffs appeal the judgment of the trial court denying them mandatory injunctive relief. Defendants Williamson cross-appeal on the issue of the trial court's award of mandatory injunctive relief as to the drainage system and of damages to plaintiffs' fence. We affirm in part and reverse in part.

Our examination of the record reveals support for the following pertinent findings of the trial court. Plaintiffs, property owners in the City of Longmont, sued defendants to compel removal of defendants Williamsons' building. The building in question is part of a block of commercial buildings fronting on a state designated right-of-way in Longmont, Colorado. The buildings at issue here are located along that right-of-way from north to south in the following order: the animal hospital of Hargreaves and Harrison, the Williamsons' office building, Quality Liquors, and the Soil Conservation District building. With the exception of two buildings, one of which is the Williamsons', all of these buildings are located approximately 110 feet from the center line of the highway.

Prior to the Williamsons' construction, their building was on line with the other buildings on the block, with a canopy protruding beyond this line.

The trial court found that:

"On June 11, 1974, Defendant Skrbina filed with the Defendant City of Longmont an application for a building permit for an office building upon the property, at or about the same time demolishing the restaurant building and relocating the sewer line to the rear of the proposed building location. The application included a proposed site plan which did not conform to the setback requirements discussed above. The application covenants to build the structure according to the 'ordinances' of the City of Longmont.

"The evidence establishes that Defendants Williamson were unaware of the setback ordinance and that Defendant Skrbina, although aware of it, believed it in conflict with another unspecified zoning ordinance governing parking and indicated upon the site plan a setback of twenty feet from the right-of-way line along Main Street. The planning and building authorities of the City of Longmont initially rejected the application but, after a meeting between Defendant Skrbina and the City Manager, the application was approved, and on June 12, 1974, the building permit issued. The testimony is in conflict as to whether the setback issue was specifically discussed but, in any event, the matter was not submitted to the Board of Adjustment for a variance and the permit permitted construction in violation of the setback ordinance. As characterized at page five of Plaintiffs' Trial Brief the authorities of the City of Longmont made a mistake. Having secured a building permit, the Defendants commenced construction."

The site plan consisted of a freehand drawing without showing any distance from the center of the street. The application for a permit which was filed with the so-called site plan was signed by Phil G. Skrbina and states:

"I hereby acknowledge that I have read this application, filled out in full the information required, completed an accurate plot plan, and state that all the information required is correct and agree to build this structure according to the 'UNIFORM BUILDING CODE' and the 'ORDINANCES' of the City of Longmont, Colorado."

On July 12, 1974, plaintiffs advised defendant Skrbina and the city that they believed that the construction violated the ordinances of the city. Subsequently, they sent written notice of the violation of the city's setback ordinance to defendants Skrbina and Williamson. On July 12, 1974, approximately $15,000 of construction work would have been lost if the building had been moved.

The City refused the request of the plaintiffs that the construction work be stopped, and the Williamsons proceeded with the construction. Plaintiffs filed this action after completion of the building which at the time of trial had a value in excess of $150,000 and leases running up to six years.

I

Plaintiffs contend that they are entitled to injunctive relief requiring removal of Williamson's building insofar as it is in violation of the city's setback ordinance. We agree.

Plaintiffs as owners of property within the City of Longmont have statutory standing to maintain this action under the Longmont Zoning Code § 4–14–2, which provides that any owner of real estate within the city may institute appropriate action, including injunction, to remove an unlawful construction in violation of the zoning code. Under this ordinance, plaintiffs need not show special damages to maintain their action as is generally required of private suitors in this kind of case. *See* 4 *R. Anderson, American Law of Zoning* § 27.11 (2d ed. 1977). However, this ordinance does not by itself set forth the requirements which must be proved if plaintiffs are to prevail in their suit.

The trial court, in deciding against plaintiffs, determined that it was required to "weigh the circumstances so that it shall not act oppressively." In light of this determination, the central issue before us is whether private parties, suing to enforce a municipal setback ordinance, may prevail only if they show that their damage is more than minimal in relation to the cost of compliance.

Generally, in Colorado cases involving injunctions to enforce municipal zoning ordinances, a determination of relative hardships has not been made. *See Englewood v. Kingsley*, 178 Colo. 338, 497 P.2d 1004 (1972); *Denver v. Chuck Ruwart Chevrolet, Inc.*, 32 Colo.App. 191, 508 P.2d 789 (1973). Although these cases have involved suits by public officials to enforce

use restrictions and are thus not controlling here, we nevertheless conclude that the trial court erred in "weighing the circumstances" in this case. That is, we hold that a trial court may not weigh the hardships of a defendant in relation to those of a private plaintiff so as to deprive that plaintiff of an injunction to bring a building into compliance with a valid municipal setback ordinance.

This holding is consistent with that announced in *Flinn v. Treadwell*, 120 Colo. 117, 207 P.2d 967 (1949). There, the Flinns had been granted a building permit to construct a garage which extended beyond the front of the house which construction would have been contrary to the city ordinance. The permit stated the "front yard as is." The building department stopped construction, and the Flinns filed a suit seeking an injunction and a declaratory decree authorizing them to proceed with their garage. At the time the building was stopped, the Flinns had expended approximately $900. In affirming a judgment adverse to plaintiffs, the court stated:

"No doubt plaintiffs' complaint was largely engendered by the hardship apparent from the enforcement of the ordinance."

Treating this argument of hardship as being an attempt to invoke the doctrine of estoppel, the court stated that: "Before [defendants] can invoke this doctrine, it must be shown that they were unmistakably misled, and that they exercised due diligence . . . ." It then concluded that such conditions had not been met and that since the Flinns had not pursued the proper remedy of seeking a variance, they "proceeded at their peril." We conclude the situation here is analogous to that in *Flinn*.

The finding of the trial court that defendants proceeded in good faith seems, at most, to be a conclusion by the court not supported by the evidence. The proposed site plan did not conform to the setback requirements. The trial court found that the owner was unaware of the setback ordinance, but that the contractor was aware of the ordinance but believed it was in conflict

with another unspecified zoning ordinance. Defendants do not now contend that the supposed conflict with another specified zoning ordinance was legitimate. They did not seek a variance from the Board of Adjustment but proceeded to complete the construction of their building even though they were advised by the plaintiffs that they were in violation of the ordinance.

We are supported in our conclusion by the reasoning of the court in *Little Joseph Realty, Inc. v. Town of Babylon*, 41 N.Y.2d 738, 395 N.Y.S.2d 428, 363 N.E.2d 1163 (1977) which sharply distinguished the law of nuisance and the law of zoning on the basis that nuisance cases, which seek to resolve disputes between private parties, require a balancing of risk utility considerations while zoning cases, which seek the benefit and welfare of the entire community, do not require a judicial accommodation of plaintiff's use to that of defendant.

As the *Babylon* court stated:

"This is not to say that risk-utility considerations have not entered into the adoption of a zoning law's restriction on use. It is rather that presumptively they have already been weighed and disposed of by the Legislature which enacted them."

*See also* 8A *E. McQuillin, Municipal Corporations* § 25.349 (3rd ed. 1976 rev. vol.) which states that:

Furthermore, it is no defense to [an action to enforce a zoning requirement] that defendant will suffer hardship from enforcement of the ordinance in the particular involved, particularly where the hardship is consequent upon the defendant's violation of the zoning ordinance."

Other jurisdictions have compelled the removal of a building erected in violation of a setback requirement without a determination of relative hardships. *Boardman v. Davis*, 231 Iowa 1227, 3 N.W.2d 608 (1942); *Conrad v. Jackson*, 107 So.2d 369 (Fla.1958); *Davis v. City of Abilene*, 250 S.W.2d 685 (Tex.Civ.App.1952).

The trial court cited *Pull v. Barnes*, 142 Colo. 272, 350 P.2d 828 (1960); *Golden Press, Inc. v. Rylands*, 124 Colo. 122, 235 P.2d 592 (1951); and *Barker v. Mintz*, 73 Colo. 262, 215 P. 534 (1923) as requiring application of the relative hardship doctrine. These cases are to be distinguished in that they do not involve a municipal zoning violation.

Further, even if the doctrine of relative hardship were to apply here, we are not inclined to reach the same result as the trial court. The Supreme Court in *Golden Press* said:

"Where defendant's encroachment is unintentional and slight, plaintiff's use not affected and his damage small and fairly compensable, while the cost of removal is so great as to cause grave hardship or otherwise make its removal unconscionable, mandatory injunction may properly be denied and plaintiff relegated to compensation in damages."

In the case of a municipal zoning violation, damages are not fairly compensable for money damages will not terminate the violation. In addition, the damages are not merely those of these particular plaintiffs but of the public generally. As the court stated in *Welton v. 40 East Oak Street Building Corp.*, 70 F.2d 377 (7th Cir. 1934), *cert. denied*, 293 U.S. 590, 55 S.Ct. 105, 79 L.Ed. 685:

"Financial relief to appellants is not the only factor in weighing equities. There is involved that immeasurable but nevertheless vital element of respect for, and compliance with the . . . ordinance of the city. The surest way to stop the erection of . . . buildings in defiance of zoning ordinances is to remove all possibility of gain to those who build illegally. Prevention will never be accomplished by compromise after the building is erected, or through payment of a small money judgment to some individual whose financial loss is an inconsequential item."

Turning to the question whether the Williamson building violates the city setback requirements, we conclude that it does. The applicable setback provision of the Longmont Zoning Code, § 4–7–6(A), provides:

"The setback for any yard adjacent to an official U.S. or State designated right of way shall be one hundred ten feet (110') from the center line of the right of way; except that where more than fifty per cent (50%) of the block is developed with buildings having less setback, the average front line of such buildings shall be the minimum setback requirement for all new construction in such developed block."

The trial court found that with the exception of a gas station toward the south end of the block and defendant's building, all of the buildings fronting upon Main Street are located approximately one hundred ten feet from the center line of that highway; and that the permit issued by the city "permitted construction in violation of the setback ordinance."

The trial court determined, in its order refusing defendant's motion to dismiss plaintiff's complaint, that when the ordinance is read as a whole, including all of the definitions involved, particularly that of the word "setback," the clear meaning of the ordinance is that the setback requirement is 110 feet from the center line of the U.S. or State right-of-way to a building unless more than 50% of the block is developed with buildings having less setback. We agree with the trial court's interpretation of the ordinance.

We conclude that plaintiffs are entitled to mandatory injunctive relief requiring the defendant landowner to bring the building into conformity with the city setback ordinance.

## II

■ Having concluded that plaintiffs are entitled to mandatory injunctive relief against defendants, we need not address plaintiffs' contention that the city is not estopped to revoke Williamson's building permit. And, in any event, plaintiffs, who were in no way responsible for the issuance of the city building permit, are not estopped from requiring enforcement of the ordinance. *Jelinski v. Eggers*, 34 Wis.2d 85, 148 N.W.2d 750 (1967).

## III

■ Plaintiffs and defendants both contend that the trial court erred in its findings concerning the drainage problems caused allegedly by the Williamson construction which raised the grade of his property. We disagree.

Based upon its finding that historically the water on this block flowed from northwest to southeast, and that the water now ponds on the property of plaintiffs Harrison and Hargreaves until it can travel through a newly created channel cut at the rear of defendant's property, the trial court properly concluded that the property of Harrison and Hargreaves as the dominant estate had a right to have water drain from their property onto the property of Williamson, the servient estate, and that Harrison and Hargreaves were thus entitled to injunctive relief to restore adequate drainage from their property. *Ambrosio v. Perl-Mack Construction Co.*, 143 Colo. 49, 351 P.2d 803 (1960); *Calvaresi v. Brannan Sand & Gravel Co.*, 35 Colo.App. 271, 534 P.2d 652 (1975).

■ With respect to the property of the other plaintiffs, the trial court found that, given the historical drainage from northwest to southeast, the construction in the late 1960's of the last Dualmatic building to the east of defendant's property formed a dike with the Quality Liquor building to the south of defendant's property. The trial court properly concluded that Williamson was entitled to eliminate the ponding of water on his property because of this blockage and that the blockage had not existed for the statutory period of eighteen years to entitle plaintiffs to block Williamson's drainage. *Hankins v. Borland*, 163 Colo. 575, 431 P.2d 1007 (1967); *Ambrosio, supra; Calvaresi, supra.*

Since there is evidence in the record to support the findings of the trial court they will not be disturbed on appeal. *Linley v. Hanson*, 173 Colo. 239, 477 P.2d 453 (1970).

## IV

Plaintiffs contend that the trial court erred in failing to award them attorneys' fees. We disagree.

Plaintiffs recognize that attorneys' fees are not ordinarily recoverable absent a specific contractual or statutory ground. *See Beebe v. Pierce*, 185 Colo. 34, 521 P.2d 1263 (1974). They contend, however, that they are entitled to attorneys' fees under § 13–17–101(3), C.R.S. 1973 (1980 Cum. Supp.) because the refusal of the city to revoke Williamson's building permit was frivolous and groundless. This statute which applies to proceedings commenced on or after July 1, 1977, *see* Colo.Sess.Laws 1977, ch. 189 at 798, does not apply to this case since plaintiffs filed their complaint in August 1974.

Plaintiffs also contend that this case falls within two of the exceptions to the general rule of nonrecovery. First, they assert that they are acting as "private attorney generals" to vindicate a strong public policy in the enforcement of zoning ordinances and thus are entitled to attorneys' fees. *See Denver Association for Retarded Children, Inc. v. School District No. 1*, 188 Colo. 310, 535 P.2d 200 (1975). However, since no specific legislative authorization for attorneys' fees appears in the Longmont ordinance granting plaintiffs standing to bring this suit, an award of attorneys' fees would be improper. *See Silverstein v. Sisters of Charity of Leavenworth Health Services Corp.*, 38 Colo.App. 286, 559 P.2d 716 (1976).

Second, plaintiffs contend that they were forced to litigate with third parties because of the negligence of the City of Longmont in issuing the building permit. However, this exception to the general rule does not apply here where plaintiffs have not been embroiled in *separate* litigation because of the City's actions. *See Lovell Clay Products v. Statewide Supply Co.*, 41 Colo.App. 166, 580 P.2d 1278 (1978).

We conclude that the trial court did not err in refusing to award plaintiffs attorneys' fees.

## V

Defendants contend on cross-appeal that the trial court erred in awarding plaintiffs Harrison and Hargreaves $1,000 damages for injury to their fence. We disagree.

Plaintiff Hargreaves testified as to the cause of the damage and as to the cost of repair. Defendants disputed both the question of causality and damages. There is evidence in the record to support the trial court and its findings will not be disturbed on appeal. *Linley v. Hanson, supra.*

The judgment is reversed and the cause is remanded to the trial court for an order consistent with this opinion on the issue of plaintiffs' right to mandatory injunctive relief, and for such further proceedings as are necessary to resolve the issues raised by the cross-claims of defendants Williamson and Skrbina against the City of Longmont for damages proximately caused by the City's issuance of the building permit. The judgment is affirmed on all other issues.

BERMAN, J., specially concurs.

STERNBERG, J., dissents.

BERMAN, Judge, specially concurring.

I concur in the opinion written by Judge Coyte but I add some thoughts of my own in support of that opinion.

The dissent relies upon *Hatfield v. Barnes*, 115 Colo. 30, 168 P.2d 552 (1946), in support of the proposition that a finding of good faith is a finding of fact which this court may not disturb. And, so it was in *Hatfield*, but only because, in that action "[p]laintiffs . . . were required, under the pertinent federal statute and regulations, not only to establish that possession was sought for immediate use and occupancy as a dwelling for themselves, but also that it was sought in 'good faith.' "

Here, neither the zoning ordinances nor case law permit good faith to be a defense in the action brought by these plaintiffs, even though it might well be a defense if the action had been brought by the city against the defendants Williamson and Skrbina. Nor for that matter does the evidence support the trial court's finding that defendants acted in "good faith." Certainly, ignorance of the zoning law was no excuse for the Williamsons nor for Skrbina

who, in the trial court's words, relied upon some "unspecified zoning ordinance governing parking."

STERNBERG, Judge, dissenting:

I dissent. In my view, merely to state the pertinent facts leads to the conclusion that the trial court was correct, and therefore, that the majority is in error.

The defendants applied for and were issued a building permit. Their application was accompanied by a plot plan showing the location of the building on the lot. That plan showed that the front of the building was to be set back 20 feet from the right-of-way. It turned out that the city made a mistake in issuing the building permit in that the building violated the predominant set-back requirement of the zoning ordinance. However, this error was not called to the city's attention by the owners of adjoining businesses until after defendants had expended some $40,000 in the construction process, $15,000 of which related to foundations, excavation and sewer relocation on the site. As a result, the city refused to stop the work because, on advice of counsel, it concluded that it was estopped.

The plaintiffs, owners of neighboring businesses, elected not to seek a temporary restraining order because of high bond costs. Only after the building was completed at a cost of $150,000 was this suit initiated.

In proper recognition of the equities involved, the trial court refused to issue an injunction requiring defendants to demolish the building, but the majority now so orders. In my view, the majority opinion indulges in appellate fact finding and bypasses existing Colorado authority to reach an oppressive result.

## I.  Findings of Fact—Good Faith

Certain findings of the trial court must be stressed. Based on evidence in the record, the court found that the application for the building permit by the defendants, the issuance of the permit, and the city's refusal to issue a stop work order were all done in good faith. Such a finding of good faith is a finding of fact, *Hatfield v. Barnes*, 115 Colo. 30, 168 P.2d 552 (1946), and since it is amply supported by evidence in the record, it is, despite the majority's desires to the contrary, binding on review. *Page v. Clark*, 197 Colo. 306, 592 P.2d 792 (1979); *Linley v. Hanson*, 173 Colo. 239, 477 P.2d 453 (1970).

That those applying for the permit could be uncertain of the set-back requirement is not surprising. The provision of the zoning ordinance that was violated is not an unambiguous statement that the building must be a certain number of feet from the center line of the right-of-way; rather, after stating a specific set-back from the center-line of the right-of-way, the ordinance provides that the set-back distance is to be less than that specified where "50% of the block is developed with buildings having less set-back." Another ordinance relating to parking adds to the confusion, and it is also significant that on both sides of the blocks located to the north and to the south of the one in question, the set-back requirement had not been enforced, and buildings had been constructed close to the street. Also, the record discloses that prior to the present construction, a restaurant was located on the site, the front of which lined up with the other buildings in the block, with the important exception that a canopy roof, some 16 feet in height and supported by pipes, extended from the front of the building to within 17 feet of the right-of-way, contrasted with the 20 feet distance from the street of the new structure.

Finally, it was undisputed that the owners had no knowledge whatsoever of the predominant set-back ordinance and there was evidence that, while the builder knew of the ordinance, he believed it to be inapplicable in that it conflicted with other zoning requirements.

In light of these total circumstances, the trial court's findings represent eminently reasonable inferences from the evidence, and are not subject to rejection by an appellate court.

## II.  Applicable Legal Authority

The authority relied upon by the majority to sustain the issuance of an injunction is

inapposite and, in any event, unpersuasive. In *Englewood v. Kingsley*, 178 Colo. 338, 497 P.2d 1004 (1972), where the defendants had *stipulated* that injunctive relief would issue if they failed to bring the property into conformity with zoning requirements, the court approved use of an injunction to stop a non-conforming use, *i. e.*, a junkyard. In *City & County of Denver v. Ruwart*, 32 Colo.App. 191, 508 P.2d 789 (1973), an injunction issued against use of property as a car lot solely on the basis of a showing of a zoning violation because the property owner raised no equitable defenses. *Ruwart* stands for the proposition that where, as here, a defense is raised, something more than a mere violation of the zoning ordinance must be shown in order to justify injunctive relief.

Furthermore, the facts in both of these cases are markedly different from those here. In neither case did the injunction require removal of or alteration of a permanent improvement to the subject property. And, in each case, the suit was brought by the municipality itself, not a private party.

Nor is *Flinn v. Treadwell*, 120 Colo. 117, 207 P.2d 967 (1949), a case relied upon at length by the majority, any better authority. It too did not involve private parties— Treadwell was the building inspector, and there was no finding by the trial court of good faith. Indeed, I would read *Flinn* for the proposition that injunctive enforcement of a zoning ordinance requiring the removal of a permanent improvement may be defeated if the elements of equitable estoppel are present. In *Flinn* a "willful violation" of the zoning ordinance was shown and, referring to the property owners' carelessness and negligence, the court stated: "it is difficult to comprehend how [Flinn] would proceed with the construction without reading the permit as issued." We note that the permit in this case was devoid of any reference to the set-back.

In summary, I know of no Colorado authority for the proposition that where, as here, a building has been erected in good faith reliance on a city-issued building permit it can be ordered wholly or partially demolished simply because it fails to comply with a zoning ordinance.

Indeed, existing Colorado case law mandates a different result. In suits like this, brought by private parties to compel removal of existing structures, relative hardships have been balanced. *Pull v. Barnes*, 142 Colo. 272, 350 P.2d 828 (1960); *Golden Press, Inc. v. Rylands*, 124 Colo. 122, 235 P.2d 592 (1951). The majority would distinguish these cases because they are not zoning cases and apparently would rule that where enforcement of municipal zoning ordinances is involved, judicial accomodation of plaintiff's use to defendant's is inappropriate because the legislative body has already applied a balancing test in adopting restrictions on use.

If the city itself were suing to enforce its own ordinance, this logic might be compelling. Indeed, in every case cited in the majority opinion where a court has compelled removal of a building erected in violation of a set-back requirement without a determination of relative hardships, the municipality was a party to the suit. *Boardman v. Davis*, 231 Iowa 1227, 3 N.W.2d 608 (1942); *Conrad v. Jackson*, 107 So.2d 369 (Fla.1958); *Davis v. City of Abilene*, 250 S.W.2d 685 (Tex.Civ.App.1952). Although the city was sued in *Little Joseph Realty, Inc. v. Town of Babylon*, 41 N.Y.2d 738, 395 N.Y.S.2d 428, 363 N.E.2d 1136 (1977), a case relied upon by the majority for the proposition that a balancing of interests is inappropriate when a zoning ordinance is violated, that case is inapposite because the purpose of the suit was to enjoin construction, not to require that an existing building be destroyed.

Here, the city does not seek to enforce its zoning regulations. As found by the trial court, the city made a "mistake" in issuing the building permit in this case; thus, as the city attorney advised, the city was estopped to interfere with the completion of the structure. *Crawford v. McLaughlin*, 172 Colo. 366, 473 P.2d 725 (1970); *Denver v. Stackhouse*, 135 Colo. 289, 310 P.2d 296 (1957); *Miller v. Palmer Lake*, 36 Colo.App. 85, 534 P.2d 1232 (1975).

While *Davis v. Abilene, supra*, cited by the majority, does represent a situation in which a Texas court permitted a city to compel removal of a building constructed in reliance on a permit issued by mistake, estoppel is the law in Colorado. And, it is good law. One acting in good faith who is issued a building permit must, at some point, be able to rely on it without risking devastating consequences if a structure built in compliance with the permit is later shown not to comply with city zoning requirements.

Also distinguishable is the Iowa case of *Boardman v. Davis, supra*, where the city was allowed to join in a suit to compel removal of a structure not meeting set-back requirements after a building permit had issued. There, no site plan was attached to the building permit, and thus, the city was not on notice of the structure's non-compliance until construction began. Here, a site plan clearly showing a 20 foot set-back accompanied defendant's application.

In a recent case where property owners brought an action against a developer to compel removal of three buildings constructed in compliance with an approved plan, but in violation of a frontage requirement, the Oregon Supreme Court stated:

"The court may refuse an injunction in certain cases where the hardship caused to the defendant by the injunction would greatly outweigh the benefit resulting to the plaintiff. The injunction does not issue as a matter of absolute or unqualified right but is subject to the sound discretion of the court. Although the authorities have not uniformly adopted the comparative injury doctrine, we are convinced that it represents the better rule." *Hickman v. Six Dimension Custom Homes*, 273 Or. 894, 543 P.2d 1043 (1975).

A similar result was reached in *Salt Lake County v. Kartchner*, 552 P.2d 136 (Utah 1976). *See also* D. Dobbs, *Remedies* § 5.7 (1973).

I would follow this rule. Indeed, *Pull v. Barnes, supra*, and *Golden Press, Inc. v. Rylands, supra*, mandate its use in this case.

While neighboring property owners and the community at large have rights vis-a-vis zoning ordinances, these rights are adequately protected through a balancing of relative hardships.

It must be emphasized that a balancing test is appropriate only where, as here, there is a finding of good faith. In one case relied upon by the majority, *Welton v. 40 East Oak Street Building Corp.*, 70 F.2d 377 (7th Cir. 1934), the property owners deliberately defied the law, and the court specifically found "bad faith" and "affirmative misconduct." Similarly in *Flinn v. Treadwell, supra*, there was a "willful violation" of the ordinance. In *Conrad v. Jackson, supra*, construction of the offending structure commenced without benefit of a city-issued building permit. I would agree that where zoning requirements are openly flaunted or ignored, a balancing test is inappropriate. However, I find neither legal nor equitable support for the view that even though a building is constructed in good faith reliance on a properly issued building permit, the existence of a later discovered zoning violation mandates that its owner must face the "wrecking ball justice" of the majority.

### III. Trial Court Ruling

Following the dictates of *Golden Press, Inc. v. Rylands, supra*, the trial court weighed the circumstances so as not to act oppressively, and determined that the onus of the city's mistake should not fall so heavily on the defendants. In balancing the detriments to the parties it concluded that the injury sustained by defendants if they were compelled to destroy all or part of a $150,000 building far outweighed the damage plaintiffs incurred through the intrusion of the building into the set-back zone. The trial court noted, in this regard, that the pre-existing structure on the property had a canopy and hedges extending almost to the street so that the additional impairment of visibility of immediately adjacent buildings to passing motorists was "slight" and that businesses located next to the subject building had suffered "no apparent loss" by virtue of the impairment of visibility.

In my view, the trial court's judgment was eminently correct. Indeed, it would be difficult to postulate a more compelling set of facts requiring use of a balancing test than those present here: a mistake by the city; good faith reliance by the defendants; a recognition by the city that it was estopped; no apparent loss to the plaintiffs. The well-reasoned opinion by the trial court arrived at the only reasonable conclusion to be drawn from these facts. The existing law sanctions that court's judgment. It should be affirmed.